## In the matter of Benjamin V. Page, Admr.

*Filed at Ottawa November 13, 1886.*

1. Wills—*proof of execution, where the will has been lost or destroyed.* Section 6 of the Statute of Wills, relating to the proof of wills when an attesting witness is dead, applies to lost or destroyed wills the same as to wills produced before the court.

2. In this country, the ruling, in general, is, that a will may be established by one, only, of the attesting witnesses, if he can testify to a compliance with the statute relating to its execution. This does not, however, dispense with the necessity of the will being attested by two witnesses; and this rule applies equally to a lost or destroyed will.

3. Same—*proof of contents of lost will—by a single witness—declarations of testator.* The contents of a lost or destroyed will may be proved by the testimony of a single witness.

4. The declarations, written or oral, made by a testator after the execution of his will, are, in the event of its loss, admissible, not only to prove that it has not been canceled, but also as secondary evidence of its contents.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. William H. Barnum, Judge, presiding.

Mr. George W. Smith, for the appellant:

If the will is traced into the testator's possession and custody, or is not found at all, it will be presumed the testator destroyed or mutilated it, *animo revocandi.* The presumption is rebutable. Redfield on Wills, p. 307, sec. 8, p. 348, sec. 9, note 14; *Lord St. Leonard's case,* 195.

The following cases state the rule of presumption clearly, and show its force: *Betts* v. *Jackson,* 6 Wend. 173; *Knapp* v. *Knapp,* 10 N. Y. 276; *Chisholm* v. *Ben,* 7 B. Mon. 408; *Smock* v. *Smock,* 3 Stockt. (11 N. J. Eq.) 156.

As to the proof of a lost or destroyed will, we refer to the following authorities: Statute of Wills, secs. 2, 6; *Crowley* v. *Crowley,* 80 Ill. 469; *Theakston* v. *Marson,* 4 Hogg, 313; *Hubb* v. *Clark,* 1 id. 115; *McKinzie* v. *Yoe,* 3 Curtis, 125;

4 Burns' Eccl. Laws, 324; Toller on Executors, 71; *Burles* v. *Bush,* L. R. 1 P. & D. 472; *Whorram* v. *Whorram,* 3 Sw. & Tr. 301; *Dickey* v. *Malechi,* 6 Mo. 177; *O'Fallon* v. *Mullanphy,* 4 id. 601; *Graham* v. *O'Fallon,* 3 id. 354; *Baker* v. *Dobyns,* 4 Dana, 220; *Steele* v. *Price,* 5 B. Mon. 58; *Dan* v. *Brown,* 4 Cow. 483; *Jackson* v. *Betts,* 6 id. 377.

As to proof of contents of will, see 1 Redfield on Wills, 349; *Davis* v. *Sigourney,* 8 Metc. 487; *Rhodes* v. *Vinson,* 9 Gill, 171; *Hale* v. *Monroe,* 28 Md. 98; *Durfee* v. *Durfee,* 8 Metc. 490.

Mr. A. B. Jenks, and Mr. Wallace Smith, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

Joseph P. Maxwell died in Cook county on the 22d day of September, A. D. 1876, leaving surviving him, a widow, Sarah J. Maxwell, and several children. No will being discovered at the time of his death, administration of his estate was granted to Benjamin V. Page and Sarah J. Maxwell. On the 26th day of October, A. D. 1881, Sarah J. Maxwell having discovered, as she alleged, within a few days of that time, that Joseph P. Maxwell made a last will and testament on or about the 1st day of August, A. D. 1876, which he left unrevoked at the time of his death, presented her petition to the probate court of Cook county, that the same might be probated. The probate court made an order admitting the alleged will to probate, and that order was affirmed, on appeal to the circuit court of Cook county. An appeal was prosecuted from the order of the circuit court to the Appellate Court for the First District, and that court affirmed the judgment of the circuit court. The case is now before us by appeal from the last named judgment.

It is provided in our Statute of Wills, (Rev. Stat. 1874, p. 1101,) in section 2, that "all wills, testaments and codicils * * * shall be reduced to writing, and signed by the testator or testatrix, * * * and attested, in the presence of

37—118 Ill.

the testator or testatrix, by two or more credible witnesses."
And section 6 provides, that in "all cases where any one or
more of the witnesses to any will, testament or codicil, as.
aforesaid, shall die, or remove to parts unknown to the par-
ties concerned, so that his or her testimony can not be pro-
cured, it shall be lawful for the county court, or other court
having jurisdiction of the subject matter, to admit proof of
the handwriting of any such deceased or absent witness, as.
aforesaid, and such other secondary evidence as is admissible
in courts of justice to establish written contracts generally, in
similar cases, and may thereupon proceed to record the same,
as though such will, testament or codicil had been proved by
such subscribing witness or witnesses in his or their proper
person." This, it will be observed, is not restricted to cases.
where the will is actually produced before the court. The
language applies to all cases wherein a witness to the will or
codicil dies; and the same reason that would exclude it from
lost or destroyed wills, would exclude the language requiring
wills to be witnessed by two or more witnesses, from such
wills. But all wills are to be attested in the same way, and
the only difference between wills that are produced in open
court, and those that have been lost or destroyed, is in the
mode of proving their contents. The will that is produced
shows what its contents are, but secondary proof must be
made of the contents of a lost or destroyed will.

That the contents of a lost or destroyed will may be proved
by the testimony of a single witness, is settled, in England,
since the decision in the great case of *Sugden* v. *Lord St. Leon-*
*ards*, 17 English, (Moak's notes,) 453. And like ruling has
obtained in this country. (*Dickey* v. *Malechi*, 6 Mo. 177.)
And in this country the ruling in general is, that a will may
be established by one, only, of the attesting witnesses, if he
can testify to a compliance with the statute relating to its
execution. *Welch* v. *Welch*, 2 T. B. Mon. 83; *Dan* v. *Brown*,
4 Cow. 483; *Jackson* v. *Vickery*, 1 Wend. 431; *Lambert* v.

*Hooper's Exrs.* 29 Gratt. 61; *Jackson* v. *Legrange,* 19 Johns. 386; *Jauncey* v. *Thorne,* 2 Barb. Ch. 40; *Thornton* v. *Thornton,* 39 Vt. 122. See, also, to like effect, in principle, *Doran* v. *Mullen,* 78 Ill. 342. And the fact that the will is destroyed or lost makes no difference in this respect, as will be seen by *Dickey* v. *Malechi, supra,* and *Dan* v. *Brown, supra.* Sugden v. *St. Leonards, supra,* also holds that declarations, written or oral, made by a testator after the execution of his will, are, in the event of its loss, admissible, not only to prove that it has not been cancelled, but also as secondary evidence of its contents. It has been held otherwise in New York, but this, in our opinion, is the more reasonable ruling. Cockburn, C. J., in speaking of this question, among other things, said: "In like manner the declarations of a testator have been admitted to show the continuing existence of the will at the time they were made, and so to rebut the presumption of the will having been destroyed, *animo revocandi,* when the will, having remained in the custody of the testator, is no longer forthcoming. Thus, if a testator were to say, 'When I am dead, you will find my will in such a place,' or 'I have left my estate of Blackacre to my son John,' or 'I have left £5000 to my daughter Mary,' such, or similar declarations, would be receivable in evidence to show that the will was, so far as was known to the testator, in existence at the time they were made." And he then goes on to show, that, upon like principle, such declarations are also admissible to prove the contents of the will, discriminating *Doe* v. *Palmer,* and overruling *Quick* v. *Quick.* To like effect, see, also, *Hope's Appeal,* 48 Mich. 518.

The evidence, here, is complete as to the due formal execution of the will. Mr. Tourtelotte, a prominent member of the bar of the city of Chicago, testified, that about the first day of August, A. D. 1876, at the request of Joseph P. Maxwell, he drew his will for him; that Maxwell then signed it in the office of Eldridge & Toutelotte, in the presence of the

witness and H. P. Fulton; that he (Tourtelotte) and Fulton witnessed Maxwell sign the will, at Maxwell's request; that the witnesses then, in Maxwell's presence, and in the presence of each other, signed their names to the will, as witnesses thereto; that no one else was present at the time; that Maxwell was then of sound mind and memory; that after the will was signed by Maxwell and the witnesses, Maxwell took it away with him; that H. P. Fulton died in the spring of 1877. Tourtelotte gives a copy of the will. By it, Maxwell devised his entire estate to his wife, adding this language: "To have and to use the same, and dispose of the same as she may deem best, having full confidence that she will deal justly by the children."

The presumption arising from the non-discovery of the will since the death of the testator, is, that he revoked and cancelled it, and the question is, whether that presumption is overcome by the evidence, here. Tourtelotte testified, that some time after he drew the will,—a few weeks before the death of the testator,—he and Maxwell talked about the will, and Maxwell said he then had it in a safe; that the talk was in regard to whether Tourtelotte or Maxwell should keep the will, and Maxwell said, "he had it in a safe place, among his other papers." Philena Maxwell, a daughter of the testator, says, in substance, that about the last of August or first of September, A. D. 1876, her father and her mother and her sister were at Cleveland, and they returned within two weeks of the 22d of September, and he was then sick, and he remained sick until he died, on the 22d of September; that he never went to his place of business, nor left the house or his bed, after he returned; that after his return, and while he was thus on his deathbed, she heard conversations between him and her mother, in which he said that he expected to die, and that there was a will, and everything would be left to her mother, at her discretion, for the good of the children. Thomas Maxwell, a son of the testator, says: "After father

was taken sick,—his last sickness,—he did not leave the house; he was sick about two weeks; just before his sickness he was away; * * * he came home sick; * * * during father's last sickness I heard him say that there was a will; * * * he was talking to my mother; * * * that was a few days before he died; * * * I don't remember exactly what he said, in words, but what he meant to convey was, that he left a will, and left her provided for, and the will was in her favor." Frank E. Maxwell, another son of the testator, says : "About four weeks before my father died, he was going out of town. He said if anything happened to him—that he should die—there was a will left at a factory of his."

No one contradicts either of these witnesses. If they have any interest in the event of the suit, they testify against it. No circumstance tending to affect their veracity is in evidence.

The will, it will be observed, was made only some six or seven weeks before the testator's death. There is not a circumstance in evidence tending to show subsequent dissatisfaction on the part of the testator with the will, or any attempt or wish to cancel or change it, but there are, on the contrary, these repeated declarations, after it was made, from time to time, up to within a few days of his death, recognizing its continued existence. Why should he have spoken falsely in this respect,—and this, too, in the face of impending death, realized by him? Not the shadow of an excuse is shown. We think the conclusion must be, that the testator did not, contrary to all these assertions, intend to revoke and cancel the will. There is, it is true, the circumstance that he sent his son for a paper, while he was lying sick, which he did not return to the safe; but this son could read, and says that he, at one time, saw among the papers an envelope indorsed "Will," and he does not pretend it was that paper which he carried to his father.

It is useless to discuss the facts further. Some circumstances have been pressed in argument, such as the fact that

a previous memorandum for a will was not destroyed, and that the testator retained the custody of the will instead of leaving it with Tourtelotte, which we do not deem of any significance. In our opinion they are just as consistent with the truth of the repeated declarations of the testator as with the view claimed by appellant. It is not indispensable that we should determine what became of the will. It is enough that, in our opinion, it was not revoked or cancelled by the testator.

The judgment is affirmed. *Judgment affirmed.*

This case, when first considered, was assigned to the late Justice DICKEY to prepare the opinion, but by some inadvertence the record was mislaid, and no opinion was prepared in his lifetime, and the record was not found until the September term, 1886.