[INLOW ET AL. v. HUGHES ET AL.

[No. 5,422. Filed January 24, 1906. Rehearing denied April 27, 1906. Transfer denied June 21, 1906.]

1. EVIDENCE.—*Lost Wills.—Probate.—Post-Testamentary Declarations of Testator.*—The post-testamentary declarations of a testator are admissible, in a suit for the establishment and probate of an alleged lost or destroyed will, to corroborate the testimony of other witnesses testifying to the contents of such lost or destroyed will. p. 381.

2. WILLS.—*Lost or Destroyed.—Probate.—Witnesses.—Statutes.— Evidence.*—Under §2779 Burns 1901, §2609 R. S. 1881, the establishment and probate of an alleged lost or destroyed will

requires the testimony of two witnesses to the provisions thereof, the testimony of the attorney drafting such will supported by the testimony of the principal devisee substantiating only a part of the provisions of same being insufficient to establish the whole of such will, and post-testamentary declarations of the testator are not sufficient to supply the necessary testimony of the other witness to such provisions, as required by such statute.   p. 390.

From Montgomery Circuit Court; *Jere West,* Judge.

Suit by Charles W. Hughes and others against Rebecca Inlow and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*Crane & McCabe, Clyde H. Jones* and *John Murphy,* for appellants.

*M. M. Bachelder,* for appellees.

BLACK, P. J.—This was a suit for the establishment and probate of the alleged lost or destroyed last will and testament of James L. Wilson, deceased, and for permission for the executor named therein to qualify and enter upon the duties of such trust.   The proceeding was brought by the devisee and certain legatees and the person so named as executor, who, with such person in the character of executor, are the appellees; the defendants, who are appellants herein, being the heirs at law of the testator and other legatees.

The complaint was in two paragraphs; the first proceeding upon the theory that the will had been lost or destroyed since the death of the testator, and the second alleging that a short time before his death he destroyed the will, and that when he did so he was of unsound mind and not capable of revoking his will, and that during all the time from the destruction of the will to his death he was of unsound mind.   It was alleged in each paragraph that the plaintiffs were unable to state the provisions and terms of the will in the exact language used therein; but what was stated to be the substance thereof, so far as could be ascertained, was set out in the pleading.

Issues formed by answers of general denial were made, and the court rendered a special finding of facts. The will was adjudged established and proved, and thereafter the person named therein as executor qualified as such.

It was specially found by the court, among other things, that the terms and provisions of the will, executed by the testator October 18, 1897, were in substance as follows:

"I give and devise to C. W. Hughes the place where I now live, being all the real estate that I now own, to have and hold the same during his lifetime, he having the right to dispose of or sell the same at any time he may see fit. In case the same is not disposed of by said C. W. Hughes during his lifetime, then at the death of said C. W. Hughes said real estate shall go to the children of said C. W. Hughes: Provided said C. W. Hughes shall not bring any claim against my estate after my death for services and support rendered. After the payment of the above legacy, I give and devise $500 to Eliza Standiford and $500 to Mary Standiford; and after said legacies are paid in full I give and devise to Sallie Elliott, wife of James Elliott, $250, and to Catherine Elliott $250; and after said legacies are paid in full I give and devise to Armilda Patterson $150 and to the Methodist Episcopal Church $150; and that James Standiford be executor of this my last will."

It was further found that the part of the will which used the words "C. W. Hughes" was intended by the testator to mean and refer to Charles W. Hughes, a plaintiff in this case, and that "all that part of the will which reads 'to have and hold the same during his lifetime, he having the right to dispose of or sell the same at any time he may see fit. In case the same is not disposed of by said C. W. Hughes during his lifetime, then at the death of said C. W. Hughes said real estate shall go to the children of said C. W. Hughes: Provided said C. W. Hughes shall not bring any claim against my estate after my death for services and support rendered,' has only been proved by one

witness." In the judgment, the will thereby established was set forth as in the finding, including the part thereof so found to have only been proved by one witness.

Mr. Wilson, October 18, 1897, duly executed a will, the last will he was shown to have executed. This was satisfactorily proved by the testimony of the two subscribing witnesses, who knew nothing of the provisions of the will, which was written for the testator by another person, an attorney at law. The testator died April 23, 1902, in Montgomery county, Indiana, at the age of eighty-seven years and two months. There was evidence, which the trial court regarded as sufficient, tracing this will to the possession of the testator a short time before his death. This will was not found after his death, although there was diligent search for a will. There was no evidence directly showing its destruction, or what became of it. There was evidence having a tendency to show a favorable disposition of the testator toward the beneficiaries in the will as found by the court and stated in the judgment, and an unfavorable disposition toward the wife of Mr. Hughes; and there was evidence relating to the question of the soundness of the testator's mind at and after the time the will so came into his possession shortly before his death, from which the court concluded that he was then, and thereafter until his death, of unsound mind. Charles W. Hughes mentioned in the finding was not a relative of the testator, but had lived with him from early childhood, had married, and still continued, with his wife and children, to live with the testator in the residence owned by the latter, who left no children and no widow surviving him, his wife having died in 1893. The other appellees are kindred of the deceased wife of the testator; and the appellants, except the Methodist Episcopal Church, are kindred of the testator. We will assume for the purposes of this decision that, if the contents of the will as so found were sufficiently proved by competent evidence, the evidence as

a whole was sufficient for the establishing of this will, and that, upon such hypothesis, if any errors occurred in the admission of the evidence, they were not of sufficient importance to warrant a reversal of the judgment. It will be understood that we direct our decision to the question as to the proof of the provisions of the will. No copy of the will was shown, and no draft or written direction from the testator was introduced. Mr. Batchelder, an attorney at law, testified that he wrote the will for the testator. He could not give the date nearer than within two months of the writing of the will, which was written in the attorney's office in the presence of the testator. The directions of the testator to the draftsman were oral. He testified: "I wrote in the will that his just debts should first be paid by his executor; and next, that he willed and devised his place where he now lives, being all the real estate that he owned, to C. W. Hughes, to have and to hold during his lifetime; that he may have the right to dispose of or sell the same at any time he may see fit; in case the same was not disposed of by said C. W. Hughes during his lifetime, then at the death of said C. W. Hughes said real estate should go to the children of said C. W. Hughes. Provided, further, that said C. W. Hughes was not to bring in any claim against the testator's estate after his death for services and support rendered. The next provision in the will was, that, after paying the foregoing legacy, he willed $500 to Mary Standiford and $500 to Eliza Standiford. The next item provided, that after paying the foregoing legacies in full he willed $500—$250 to one Elliott woman and $250 to another Elliott woman. I do not remember their first names. I think though it was Sallie and Catherine. That, after paying the foregoing legacies, in the next item he willed $250 to a woman by the name of Patterson; and in the next item he willed, after the paying of the foregoing legacies, I think it was $50 to the Methodist Episcopal Church; and in the next item, after paying all the fore-

going legacies, if there was any property left, the remainder should go to C. W. Hughes. The next item, I think it was, provided that James Standiford should be the executor of this, his last will and testament. The starting out of the will ran in the usual form; that he executed this, his last will and testament, and hereby revoked all former wills by him made. That was in the preamble of the will. That is about the words and substance of the contents of the will, as near as I can come to it." He testified that after the execution of the will he handed it to Mr. Wilson and never saw it afterward. He had no memorandum with which to refresh his memory as to the contents of the will or the conversation with the testator.

The court caused the record to show that the court called Charles W. Hughes as a witness, under §510 Burns 1901, §502 R. S. 1881, and asked him to state whether, after October 1, 1897, he read a paper purporting to be the will of James L. Wilson. The witness answered that he did. The court by another question elicited the statement that the will was signed by the persons who had witnessed the execution of the will in question. The court to the witness: "If that will contained any provisions other than the provisions relative to yourself, state what they were. A. Yes, it gave Eliza Standiford and Mary, her daughter; first gave Eliza Standiford $500 and Mary Standiford, her daughter, $500; then, after the residue—I cannot use the legal language, but the meaning was, after that was paid, there was Sallie Elliott, the wife of James Elliott, and Catherine Elliott was to get $250 each. Then, if there was anything left, Armilda Patterson, of Iowa, was to get $150, and the Methodist Church $150. Then if there was any residue—" The court: "I do not want anything concerning yourself." Witness: "You want to know who the executors were?" The court: "No, that is all I want to ask you."

It is claimed on behalf of the appellants that there was no evidence of the provisions of the will other than that furnished by the testimony of these two witnesses.

1. The appellees claim that the testimony of Mary E. Ragstle, Henry Miller and Paul P. McGinnis supplied the additional needed evidence as to the provision of the will for Charles W. Hughes. Mary E. Ragstle had known the testator for many years, and at various times had worked for his family at his home., She testified concerning a conversation which she had with the testator, when she was staying with his family, about September, 1900; that he said, that if a man and wife would live together for some time and accumulate "a right smart," he always felt that it was right for the wife's people to have a part. "He talked so much about this Mary Standiford having part. I said: 'What are you going to do for Will? Ain't you done nothing for him?' He said: 'O, yes. I intend for him to have the home place. I have fixed it for him to have the home place.'" "Do you know what home place he alluded to? A. It was where I was staying then. He was in the home place."

The witness testified that the testator had many conversations with her after that respecting his leaving his property; that she did not pay any attention to it, to recollect it exactly; that she recollected it, but could not call it over exactly, word for word. The court appears from the record to have admitted this evidence as bearing upon the question of insanity, expressing doubt as to its competency as evidence of the contents of the will.

Henry Miller, a nephew of Mr. Wilson's deceased wife, testified that he had a conversation with the testator since the year 1897; that the testator remarked that where there was a man and his wife, the only ones in the family, where the woman helped to make the property, he believed the property ought to be divided between the man's heirs and the heirs of his wife. He said it never looked fair that

the man's kin should have all of it, and the other side none. The witness said he had two conversations with the testator, both to the same effect; that he never referred to Mr. Hughes. Paul P. McGinnis testified concerning a conversation in 1898 or 1899 between him and the testator at the home of the witness, "in which it came up about Mr. Hughes and also his wife, and he stated that Will had been kind of reckless, like some of the rest of the young fellows; that he did not suppose he was any worse than other young fellows; that he intended to do the right thing with Will, but did not like his wife much."

Upon the question whether evidence of the declarations of an alleged testator, made after the execution of the will, as to its contents, the will not being produced, is admissible for the purpose of proving its contents, there has been much diversity of opinion. In *Doe* v. *Palmer* (1851), 16 Q. B. 747, it was said that such evidence was not admissible for such purpose. In the later case of *Quick* v. *Quick* (1864), 3 Sw. & Tr. 442, 10 L. T. Rep. (N. S.) 619, such evidence for such purpose was held not admissible. In *Sugden* v. *Lord St. Leonards* (1876), 1 P. D. 154, 34 L. T. Rep. (N. S.) 372, what was referred to as the dictum of Lord Campbell in *Doe* v. *Palmer, supra,* was disapproved, and *Quick* v. *Quick, supra,* was overruled. It is to be noticed that in *Sugden* v. *Lord St. Leonards, supra,* the paper admitted to probate as the will was a paper drawn up by Miss Sugden from her own knowledge of the contents of the will, as she testified, and though it was shown that in some minor respects, as to which she could not recollect, the paper was deficient, nothing but the contents of this paper was established as the will or a part thereof; also that the declarations of the testator made after the execution of the will were expressly held by Cockburn, C. J., delivering the principal opinion, to be admissible as corroborative evidence, in confirmation of Miss Sugden's statement, which it was said did not need any confirmation;

and Mellish, L. J., stated that, having read through the judgment from which the appeal was taken, he considered (as did also Jessel, M. R.) that the president of the probate division did not rely upon such evidence, and in the view of Mellish, L. J., it was not necessary to consider the question whether the subsequent declarations of the testator were admissible. Jessel, M. R., regarded the question as being whether the evidence of the person who had seen the will could be confirmed or corroborated by declarations of the testator. He said of such evidence, relating to a time before the execution of the will, that it is not strictly evidence of the contents of the instrument, because it is simply evidence of the intention of the person who afterward executes the instrument. "It is therefore," he said, "simply evidence of probability—no doubt of a high degree of probability in some cases and of a low degree of probability in others." He expressed the opinion that, irrespective of the post-testamentary declarations of the testator, there would be no ground for saying that there was not sufficient evidence to sustain the proof of the will in question.

Mellish, L. J., also said: "When a doubt is thrown on the correctness of evidence which has been given as to the contents of a will, the testator's declarations as to what he intended to put in his will, made either contemporaneously with or prior to the making of his will, are obviously evidence which corroborates the testimony as to what is contained in his will. But to my mind they do not of themselves prove what were the contents of the will; they corroborate the other evidence which has been given of the contents of the will. * * * But a declaration after he has made his will, in which he states what the contents of his will are, is not a statement of anything which is passing in his mind at the time, but it is simply a statement of a fact which took place, no doubt within his knowledge, and therefore you cannot

admit it unless you bring it within some of the exceptions to the general rule, that hearsay evidence is not admissible to prove a fact which is stated in the declaration."

When the necessities of the case of *Sugden* v. *Lord St. Leonards, supra,* as stated by the judges participating, are examined, and the use therein made of the post-testamentary declarations is considered, it must be admitted that the broad and general statement concerning such declarations in the opinion of the lord chief justice, often referred to and repeated by courts and text-writers, was not necessary to the decision, and therefore is the dictum of a very learned and eminent judge, upon which doubt has been cast not only by Mellish, L. J., in that case, but also by all the eminent judges delivering opinions in the house of lords, in *Woodward* v. *Goulstone* (1886), 11 App. Cas. 469; and the matter was left by the last-mentioned case an open question. The lord chancellor said: "As far as I am concerned, I desire to guard against its being supposed that I hold that these post-testamentary declarations are admissible." Lord Fitzgerald considered *Sugden* v. *Lord St. Leonards, supra,* as having reached the very verge of the law; and Lord Blackburn speaking of that case said: "Very considerable reasons have been given for doubting some of the propositions and doctrines laid down there, and they may be shaken to some extent."

The confidence in the reliability of such statements of a testator after the making of his will expressed by the very learned lord chief justice in *Sugden* v. *Lord St. Leonards, supra,* supposed to be justifiable perhaps in the particular case by reason of the esteem entertained by the members of the court for the testator, the first Baron St. Leonards, and Miss Sugden, does not appear to be shared generally by courts as a rule for guidance.

In the later opinion of Lord Herschell, L. C., in the house of lords, in the case of *Woodward* v. *Goulstone, supra,* it is said: "I think that common experience shows

that persons frequently allege that they have given benefits and made provisions for others after their death when those statements are absolutely without foundation, and are proved conclusively by the production of undoubted testamentary dispositions to have had no foundation. Nothing can be more dangerous, I think, than to accept as any evidence, to carry with it weight, of the contents of a will, the evidence of persons of statements made to them of bounties which they are to receive after the death of the person who made those statements." Very many expressions of like effect, and scarcely any to the contrary, may be found in the reports and text-books.

In the important and carefully-considered opinion in *McDonald* v. *McDonald* (1895), 142 Ind. 55, 83, it is said by the learned judge: "That the statements or declarations of a testator may be received in the absence of evidence of a higher character to prove the contents or provisions of a lost or destroyed will, finds support in the following English and American authorities cited." We have been interested in examining the decided cases thus cited, to one of which, *Sugden* v. *Lord St. Leonards, supra,* we have already referred at some length. For the purpose of illustrating the subject, though at the expense of some space, we will briefly notice the other cases.

*Gould* v. *Lakes* (1880), 6 P. D. 1, was held to be governed by the authority of *Sugden* v. *Lord St. Leonards, supra.* The will was in existence and was produced. The question was as to whether the several pieces of paper were brought together before the signing, and the evidence in question was held to be admissible to show that it was the intention of the testator to make dispositions in conformity with those found upon the several sheets.

In *Burls* v. *Burls* (1868), L. R. 1 P. & D. 472, a supposed draft of a lost will was proposed for probate. A number of witnesses who had read the will testified as to its contents, and it was held that the court should take the

parol evidence side by side with the draft and extract the substance of the will. There was no question concerning post-testamentary, oral declarations.

*In the Goods of Barber* (1866), L. R. 1 P. & D. 267, the contents of the will were shown by a draft and the testimony of witnesses who had seen the will or heard it read, proving that the will corresponded with the proposed draft.

In *Johnson* v. *Lyford* (1868), L. R. 1 P. & D. 546, evidence of verbal and written statements of the testator made in and about the making of his will and accompanying acts done by him concerning the same subject were held admissible as evidence of the contents of the will, which was lost; and the court pronounced intestacy. *Quick* v. *Quick, supra,* had been cited, against the evidence, but the court did not seem to regard it as in point.

In *Battyll* v. *Lyles* (1858), 4 Jur. N. S. 718, the sole question was, did any one other than the deceased knowingly destroy her last will.

In *Finch* v. *Finch* (1867), L. R. 1 P. & D. 371, the question for decision related to the question of revocation. The contents were proved by a draft, proved to be in the same words as the will, by an attesting witness, a law stationer, who prepared the will.

In *Davis* v. *Davis* (1824), 2 Addams Ecc. 223, there was evidence of the contents of the lost or destroyed codicil from a witness who had actually read it.

In *Keen* v. *Keen* (1873), L. R. 3 P. & D. 105, the only question raised was that of revocation—whether the will was destroyed by the testator with the intention of revoking it.

*In re Page* (1886), 118 Ill. 576, 8 N. E. 852, 59 Am. Rep. 395, was a case where the attorney who drew up the lost will gave a copy of it in evidence, and the question was said to be whether the presumption that the testator revoked it was overcome by the evidence. Evidence was introduced

of post-testamentary declarations, some of which related to the provisions made by the will, in agreement with the copy, and the court on appeal held upon the evidence that the will was not revoked or canceled by the testator. In the course of the opinion it was said: "That the contents of a lost or destroyed will may be proved by the testimony of a single witness, is settled, in England, since the decision in the great case of *Sugden* v. *Lord St. Leonards* [1876], 1 P. D. 154, 34 L. T. Rep. (N. S.) 372. And like ruling has obtained in this country. *Dickey* v. *Malechi* [1839], 6 Mo. 177, 34 Am. Dec. 130. * * * *Sugden* v. *Lord St. Leonards, supra,* also holds that declarations, written or oral, made by a testator after the execution of his will, are, in the event of its loss, admissible, not only to prove that it has not been canceled, but also as secondary evidence of its contents. It has been held otherwise in New York, but this, in our opinion, is the more reasonable ruling." It is to be observed that the use made in *In re Page, supra,* of the testator's declarations was upon the question of revocation. In a note to this case in 59 Am. Rep. 395, 399, reference is made to a statement in Schouler, Wills, §403, that declarations of the testator are admissible to show the contents of a lost will; and it is pointed out that all the American cases cited by Mr. Schouler in support of this statement are only to the effect that such declarations are admissible on the subject of revocation, among these American cases being *Pickens* v. *Davis* (1883), 134 Mass. 252, 45 Am. Rep. 322, one of the cases cited in *McDonald* v. *McDonald, supra.*

In *Hope's Appeal* (1882), 48 Mich. 518, 12 N. W. 682, which was an appeal from the probate of a will, Mr. Wood, testifying for contestants, swore to the drawing and execution of a second will (which could not be found) and to the surrounding circumstances, and to the fact that it contained a clause of revocation. It was said of evidence offered by declarations of the testator shortly before his

death, that if admitted it would not be weighty, but would have tended to corroborate Wood, and for that purpose was admissible. Besides, it was said that evidence of the same nature offered later by the other side and tending against Wood's testimony was admitted, and the rulings on evidence, therefore, were irreconcilable.

*In re Estate of Lambie* (1893), 97 Mich. 49, 56 N. W. 223, was a case wherein it was held that the existence and contents of the lost will had been shown by the evidence of Francis Lambie, and that declarations of Mrs. Lambie (the testatrix) that she had changed her will previously made, and left all to her nephew when Francis should be through with it corroborated such testimony, and there was no error in admitting them; citing *Sugden* v. *Lord St. Leonards* (1876), 1 P. D. 154, 34 L. T. Rep. (N. S.) 372.

In *Foster's Appeal* (1878), 87 Pa. St. 67, 30 Am. Rep. 340, the contents of the lost will were clearly and fully proved by the testimony of two witnesses, as well as by memoranda in the testator's handwriting. The decision related in part to the force of the evidence introduced to rebut the presumption of revocation arising from the fact that the will was known to be in possession of the testator himself, and that it could not be found after his death; and it was also decided that the contents of a lost will may be proved by parol evidence.

In *Conoly* v. *Gayle* (1878), 61 Ala. 116, a copy of the will was in evidence.

In *McBeth* v. *McBeth* (1847), 11 Ala. 596, it was decided, adversely to the ruling on trial, that there was sufficient preliminary proof to permit the introduction of proof that a copy propounded was a substantial copy of the will.

In *Morris* v. *Swaney* (1872), 7 Heisk. 591, testimony of witnesses who had heard the will read was held admissible as furnishing evidence of its contents, in the absence of better evidence.

Inlow *v*. Hughes—38 Ind. App. 375.

In *Reel* v. *Reel* (1821), 1 Hawks (N. C.) 248, 9 Am. Dec. 632, the declarations were held admissible as tending to show that the testator, whose will was produced, believed its contents to be different, for the purpose of proving fraud in the writer of the will, one of the executors and principal devisees.

In *Howell* v. *Barden* (1832), 3 Dev. (N. C.) 442, the question related to proof of post-testamentary declarations to show that the will was obtained by fraud and undue influence.

In *Simms* v. *Simms* (1845), 5 Ired. 684, the question was whether a certain paper, written in the handwriting of a decedent, was deposited by him among his valuable papers with the intention that it should be his will.

In *McDonald* v. *McDonald, supra,* there was no decision as to what effect the post-testamentary statements would have in a case such as the one before us. That was a case to set aside what was alleged to be a pretended will of Senator Joseph E. McDonald. The contestants were the appellees. They were not attempting to have any alleged will established and admitted to probate. It was claimed by them that his true will had been suppressed and destroyed without the testator's knowledge or consent, and that certain statements made by the testator, after the execution of the will, concerning its provisions, not in agreement with the alleged will attacked, were admissible, to rebut the presumption of revocation, and to show that the contestants were interested in the estate as devisees and legatees, that being the capacity in which they sued. It was held that evidence of the declarations were admissible for the purpose for which, as claimed by the contestants, it was introduced; the court at the same time saying that it was settled by some of the authorities cited that such statements of the testator should be received as evidence with great caution, for the reason that they are sometimes

made by him for the express purpose of misleading or satisfying curious friends or expectant relatives.

Our statute (§2779 Burns 1901, §2609 R. S. 1881) provides: "No will of any testator shall be allowed to be proven and established as lost or destroyed, unless the same shall be proven to have been in existence at the time of the death of the testator; or be shown to have been destroyed in the lifetime of the testator without his consent, or otherwise fraudulently disposed of; nor unless the provisions shall be clearly proven by two witnesses, or by a correct copy and the testimony of one witness." A similar statute, with some minor differences not here important, was enacted as section seventy-nine of our statute relating to wills, contained in R. S. 1843, p. 500. A similar statute was enacted in New York in 1830. See 2 R. S. of N. Y. 1852 (Denio and Tracy), p. 254, §88. See, also, Stevens' Ann. Code, p. 1936, §1865.

In *Harris* v. *Harris* (1863), 26 N. Y. 433, which was an action for partition of lands, where the provisions or contents of a will were proved distinctly by one witness, who drew it, at the request of the testator, and who was one of the subscribing witnesses to it, it was said that before the revised statutes, in such an action, evidence only of such an amount and degree was required as to the contents of the will as was necessary to establish any other fact in the action; that is to say, proof of the facts in issue by a single witness. It was held that the statutory requirements of two witnesses, or one witness and a copy, only applied in the direct proceeding under the statute for the purposes of probate and record of a will alleged to have been lost or destroyed, and were not designed as a general rule of evidence in all cases and in all tribunals where the execution and validity of a will, lost or destroyed by accident or design, should come in question; that the legislative intention to effect so radical a change in the common-law rules of evidence was not manifest.

In *Sheridan* v. *Houghton* (1879), 6 Abb. N. C. 234, where the two witnesses did not concur in their testimony as to some of the provisions found to be established by the surrogate, it was held that there was such a discrepancy in the evidence that the will could not be regarded as proved by two witnesses, as required by the statute.

In *McNally* v. *Brown* (1882), 5 Redf. Surr. 372, it was regarded as not necessary that the witnesses should remember the exact language used by the testator, but that they must be able to testify at least to the substance of the whole will, so that it could be incorporated with the decree, and it was considered that the two witnesses should prove all the provisions of the will as probated; citing *Sheridan* v. *Houghton, supra.*

In *Hatch* v. *Sigman* (1883), 1 Dem. Surr. 519, it was said, with reference to the statute, concerning declarations of the testator after the execution of the will alleged to have been lost, that while they are admissible, it is only as a circumstance to be taken in connection with other proof tending to establish a certain fact; that it would be rendering the strict language of the statute nugatory to say that declarations of the decedent, however lucid and precise they may be, however minutely they may detail the facts occurring at the execution of the will, and however numerous they may be, will establish the execution of the will and also be tantamount to the "two credible witnesses" made an indispensable necessity by the statute; that the declarations of deceased persons are always a dangerous kind of testimony, and are received and scanned with the closest scrutiny, and, in the usual run of cases tried in a surrogate's court, are not even admissible, except as bearing upon the testator's mental capacity; "and it would be a marvelous stretch of the judicial functions to say that the reiteration of these statements can galvanize them into the 'two credible witnesses' provided for by the statute."

In *Colligan* v. *M'Kernan* (1884), 2 Dem. Surr. 421, a will was propounded for probate, and the question was whether there was sufficient evidence to reject it upon the ground that it had been effectually revoked by a later will. It was shown in the opinion of the court that the statutory provisions as to the particular kind of proof required for "establishing" a will had no application as to the later will in such a case, and that it was not necessary, in such a case, that two witnesses should testify as to the contents of the later will, nor was it necessary to show that it was still in existence at the testator's death, or that, if not then in existence, it had been fraudulently destroyed in his lifetime. It was held that parol evidence was admissible in such a case to show that a will was executed after the one propounded and that the later will contained a clause of revocation, and that, notwithstanding the statute, the existence of the revoking clause might be proved by the testimony of a single witness. The evidence in that case as to the existence of a revoking clause was held to be merely hearsay. See, also, *Collyer* v. *Collyer* (1886), 4 Dem. Surr. 53, 62. The case last cited was a proceeding to prove a will as lost or destroyed. Concerning the evidence of the provisions of the will, the court, after referring to the statute, said: "Mr. Parsons [a counsellor at law] produced the draft of the will made by him, which, he substantially testifies, was correctly engrossed by his clerk, and, so engrossed, was executed by the decedent. Hence that draft may be treated as a substitute for one of the two witnesses required by the statute. In no other way does he prove the provisions of the will. It is true, they were simple, devising and bequeathing all her estate, real and personal, to her brother George B. Collyer, the proponent, but that will not warrant the dispensing with the one witness which the statute requires besides the draft. If it did, then it would seem that, in all cases, the person verifying the draft or copy (and it would not be evidence without such verification), by

the very act of testifying to its correctness, would thereby
become the needed witness. Such cannot fairly be considered
the design of the provision. Another witness was required,
to render the proof complete on this subject. Declarations
of the decedent as to the contents and substance of the will
are not available for such a purpose. The evidence must
come from some person who has read, or heard read, the
document. None was produced, and the proof, therefore,
falls short of what the statute requires."

It may be again remarked that there is no question in
the case before us respecting a draft or copy of the will.

Concerning the legitimate use of post-testamentary dec-
larations, see, further, *Mercer* v. *Mackin* (1879), 77 Ky.
434, 447, where, upon an application for the probate of a
writing as a lost will, it was said: "Evidence of declara-
tions of the testator as to the contents of his will is only
admissible in corroboration of other evidence, and, when
there is no other evidence, his declarations should be re-
jected." See, also, *Chisholm* v. *Ben* (1847), 7 B. Mon.
408.

In the case at bar, the attorney who drew up the will
testified as to its provisions. He was a competent witness
for such purpose. *Kern* v. *Kern* (1900), 154 Ind. 29;
*Towles* v. *McCurdy* (1904), 163 Ind. 12, 16; *Ford* v. *Tea-
gle* (1878), 62 Ind. 61. When we look for the clear proof
of the provisions by another witness, we observe that the
learned court felt bound to state that some important pro-
visions of the will, as found in another clause of the find-
ing and as set forth in the judgment, were not proved by
more than one witness. Mr. Hughes did not testify as to
the devise, with the prohibition against the filing of claims
by the devisee, or as to the residuary bequest, or as to the
revocation of former wills, or as to the direction for the
payment of debts by the executor, or as to the nomination
of the executor, as to all of which the draftsman testified.

Mr. Hughes agreed in his testimony with the draftsman as to some of the legacies, but not as to others.

In the will as set out in the findings and in the judgment there is no residuary clause, no express revocation of former wills, no direction for the payment of debts by the executor. Assuming, as we may, that probate should not be denied merely because the court could not include these matters testified to by the draftsman alone and not found by the court, yet we observe disagreement between the witnesses as to some of the bequests. The court probably considered that one witness was more nearly correct than the other, as to bequests; but the statute requires that all the provisions of the will as established shall be clearly proved by two witnesses. The entire devise, with the prohibition against the filing of claims by the devisee, as set forth in the testimony of the draftsman, is included in the finding and the judgment. As to the provisions concerning which the court expressly stated that they were proved by only one witness, little need be said. Supposing, for the moment, that there was sufficient basis for the finding of a devise of a life estate, yet that portion which the court said was proved by only one witness materially qualified the devise of a life estate by providing for a right to dispose of or sell the real estate at any time as the devisee might see fit, and directing that if he should not dispose of it in his lifetime, the real estate should go to his children, not parties to this suit, and the devisee was restrained from bringing claims against the decedent's estate for service and support. The probating of these provisions was in the face of the statute.

We are next led to seek for the clear proof by another witness besides the draftsman of the devise of a life estate, and we discover that the only supposable reliance of the trial court was upon the testimony to which we have referred concerning oral statements of the testator made after the execution of the will. In the conversations with

Mr. Miller and Mr. McGinnis there was no statement of any definite testamentary provision. It is impossible to find in them anything that can be regarded as furnishing in themselves the proof which the statute requires of any actual provision of the will, supposing it possible to supply such proof by post-testamentary declarations. The testimony of Mrs. Ragstle seems to have been supposed to be sufficient to go with that of the draftsman to constitute the clear proof of two witnesses of a devise of a life estate. There is a striking contrast between the testimony of this witness and that of the learned and experienced lawyer, who testified clearly and definitely concerning the voluntary, earnest and impressive statements of his eminent law-partner in *McDonald* v. *McDonald, supra,* a case for which the statute here applicable did not furnish the rule of evidence. In the case before us the statements were not made voluntarily and spontaneously, but were drawn out by the inquiry of a curious domestic in the testator's service, who undertook to repeat them in evidence after a long lapse of time, who acknowledged her inability to remember all the language of the testator concerning the matter, none of which, as related, imported definitely a devise of a life estate, and of whom it may be said, without impeachment of her integrity, which we would not disparage, that her mental training was but slight. The testimony of all the witnesses concerning statements of the testator has the badges of unreliability, because of which the courts and the text-writers in general give emphatic warning against such evidence. Our statute should be regarded as a protection from such unsatisfactory evidence. While we are not prepared to say that we have authority to hold such evidence inadmissible upon the question of the provisions of a lost will, the only use of it which we are now considering, yet we feel constrained, and all the more in view of our statute, to regard it as only applicable if sufficiently definite, by way of corroboration in the furnishing of the

clear proof by two witnesses of the provisions of the will, as matters of fact within their knowledge, which is required by the statute. Only such provisions as are thus proved can be established as the lost will.

We must hold that the court's findings were not supported by sufficient evidence. Judgment reversed for a new trial.