(No. 16109.—Judgment affirmed.)
WILLIAM W. CANTWAY, Plaintiff in Error, *vs.* DELL CANTWAY *et al.* Defendants in Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925.*

1. WILLS—*when erasure is presumed to have been made by testator.* Where a will remains in the testator's possession until his death and is afterwards found among his papers, partially canceled by the erasure of the name of the sole devisee and the substitution of another name, the presumption is that such cancellation and substitution were the acts of the testator, done with the intention of revoking the will as originally made.

2. SAME—*declarations of a testator are not, alone, sufficient to prove contents of lost or destroyed will.* Declarations of a testator are not of themselves sufficient to prove the contents of a lost or destroyed will, but such evidence is competent to corroborate direct evidence of witnesses testifying from their own knowledge as to the contents of the will.

3. SAME—*will must be proved as originally drawn to avoid effect of erasure as a revocation.* Where a will has remained in

the testator's possession until his death and is afterwards found among his papers with the name of the sole devisee erased and another name written in the place of the erasure, the will not having been re-published since the alteration, one who claims to be the original sole devisee and seeks to probate the will as originally drawn must prove how the will was first drawn in order to avoid the effect of the erasure as a revocation of the will.

4. SAME—*when will cannot be probated with the name of sole devisee erased.* Where a testator devises all his property "to my nephew" (naming him) but the name of the nephew is erased from the will so that it cannot be ascertained what name was written therein, the will cannot be probated and the erased words treated as blank where the testator had six nephews, and failure to prove the name of the devisee is fatal to the probate of the will.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

ROBERT V. BAKER, and E. P. HARNEY, ʃ ˙ plaintiff in error.

MILLER & STREETER, and GRANGER, NOURIE & GRANGER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Kankakee county having denied the petition of William W. Cantway for the probate of an alleged will of Noel Cantway, a writ of error has been sued out to reverse the judgment.

Noel Cantway was a resident of Momence, in Kankakee county. He died on the fifth day of December, 1921. He was about seventy years old, had never been married, and his heirs were a brother, five sisters, and five nephews and five nieces, who were the children of his deceased brother, Mitchell Cantway. He left property, real and personal, amounting to about $75,000. Administration was granted on his estate by the county court, and a nephew, Mitchell E. Cantway, was appointed administrator. Soon after, he and his attorney, V. A. Parish, were searching for an abstract to get a correct description of the real es-

tate in order to make an inventory, when they found in a bundle of Noel's papers which the administrator had brought to the attorney's office, a will sealed up in an envelope, which Noel had executed on January 10, 1889. The will was all in the handwriting of Noel, and aside from the formal parts was in these words:

"*First*—I give and bequeath to my nephew, Joseph C. Cantway, all my real estate to be accepted and received by him, and also I give and bequeath all of my personal estate, goods and chattels, of what nature or kind it may be, hereby revoking all former wills by me made."

There was an attestation clause setting forth a full compliance with the requirements of the statute, signed by J. J. Kirby and C. H. Lisman as witnesses. The name "Joseph C. Cantway" was written over an erasure which had been made in the will as originally written. The erasure was so thorough that it was impossible to discover from the paper what name had originally been written there. There was no interlineation and no other erasure in the will. The name "Joseph C. Cantway" was written in much blacker ink than the rest of the will and was in the handwriting of Noel. Joseph was a brother of Noel. He had no nephew of that name. After Parish had taken the will to Kirby, who was the only surviving witness, and learned that he knew nothing about the change in it, he advised the administrator and Joseph C. Cantway that he was of the opinion the will was not valid and that the estate was intestate. Joseph consented to have the will destroyed, and it was burned by the administrator after Parish had made a copy of it.

William W. Cantway was a nephew of Noel Cantway, the illegitimate son of his sister. At his request Parish furnished him a copy of the will. On December 4, 1923, he filed a petition in the county court of Kankakee county stating that Noel Cantway had died leaving a will which had been destroyed after his death, setting forth a copy

of the alleged will, which was the same as the copy the petitioner had received from Parish, except that it contained the name "William W. Cantway" instead of the name "Joseph C. Cantway." The petition further alleged that the will was destroyed by the heirs of Noel, or some of them, and before it was destroyed the name of William W. Cantway had been erased from the will and the name of Joseph C. Cantway, one of the heirs, had been substituted in place of it, and that the petitioner was the sole legatee and devisee under the will. The names of the heirs of the deceased were set forth in the petition, notice of hearing was given, and upon such hearing the county court denied probate of the alleged will. The petitioner appealed to the circuit court, where there was another hearing and an order denying probate. It is this order which the petitioner seeks by a writ of error to reverse, and the writ is sued out of this court because the will purports to devise a freehold estate in land.

Noel Cantway's father and mother lived on a farm about four and a half miles from Momence and William W. Cantway lived with them. The farm was Noel's. After the father's death William continued to live with his grandmother until she died. Noel was a barber and followed his trade in a shop on the ground floor of a building he owned. He lived in the second story, over the shop. William was about ten or twelve years old when his grandmother died, and was crippled. He then went to Momence and lived with his uncle Noel until he was eighteen or nineteen years old, when he went first to Chicago and afterward to Kenosha, where he has since lived, returning, however, at frequent intervals to Momence. The relation between Noel and the plaintiff in error resembled somewhat that of parent and child and always continued to be of a friendly character.

Proof was made by J. J. Kirby of the execution of the will in full compliance with the requirements of the stat-

ute. He did not read the will but simply signed as a witness. The other witness has been dead for several years. Kirby saw the original will after Noel Cantway's death, when it was shown to him by Parish. Since the will had remained in the testator's possession until his death and was found among his papers partially canceled by the erasure of the name of the devisee and the substitution of another name, the presumption is that such cancellation and substitution were the acts of the testator, done with the intention of revoking the will as originally made. *Burton* v. *Wylde,* 261 Ill. 397; *Griffith* v. *Higinbotom,* 262 id. 126; *Holler* v. *Holler,* 298 id. 418.

The plaintiff in error's contention is that from the erasure of the plaintiff in error's name and the substitution of that of Joseph C. Cantway it will be presumed that the revocation of the devise to the plaintiff in error indicated by the alteration was intended to take effect only in case of the alteration's taking effect as a devise to Joseph, and since the devise to Joseph cannot take effect because the will was not re-published after the alteration, the will must remain as originally drawn and the devise to the plaintiff in error remain unaffected by the attempted change, and the plaintiff relies upon the case of *Wolf* v. *Bollinger,* 62 Ill. 368, as sustaining that view.

The original name in the will having been so completely erased that it was impossible to make out what it had been, the plaintiff in error undertook to prove by evidence outside the instrument itself that his name was originally written in the document. He introduced the testimony of several witnesses to show that Noel Cantway had made statements to them that he had willed all his property to the plaintiff in error and everything would go to him after Noel's death. Evidence of such declarations is competent to corroborate direct evidence of witnesses testifying from their own knowledge as to the contents of the will, but declarations of a testator are not of themselves sufficient

to prove the contents of a lost or destroyed will. (*In re Page*, 118 Ill. 576; *Griffith* v. *Higinbotom, supra; Clark* v. *Turner*, 50 Neb. 290.) Here it is clearly established that the testator duly made and published the will which was found sealed up among his papers after his death, and that at some time afterward, the particular time being altogether uncertain, he obliterated the name of the sole legatee and devisee, thus making the whole will ineffective. Had he stopped with that act there is no question but that there would have been a revocation of the will, but when he inserted another name, it is claimed that by the application of the doctrine of *Wolf* v. *Bollinger, supra,* the attempted revocation was defeated. For want of a publication of the will after the alteration the change did not become effective in favor of Joseph C. Cantway, but in order to entitle the will as originally written to probate it is necessary to prove how it was originally written, what was the name originally appearing as the beneficiary.

The only witness who gave any testimony which can be claimed to have any tendency to prove directly that the name of the plaintiff in error appeared in the will is George W. Slater. He is an intimate friend of the plaintiff in error, who had lived in Momence for three years and in 1895 moved to Chicago. He knew Noel Cantway, and William W. Cantway lived with Slater in Chicago six or seven years. Slater made frequent trips to Momence, and testified that in August, 1898, William wanted him to bring William a fiddle from his uncle Noel. Slater called upon Noel in his barber shop but Noel refused to give him the fiddle. Noel went over to a box near a window and said, "See there!" and showed Slater his will. William W. Cantway's name was in the will and not Joseph C. Cantway's name. Noel said: "Everything belongs to Will when I am gone; I raised that boy; I think he is a good boy." Slater read the part where it said "to my nephew, William W. Cantway." The will was written in longhand.

This is the substance of Slater's testimony, and it does not even show that there was a will, much less prove its contents or tend to show that it was the will here in question. It does not appear to have been signed by Noel Cantway or to have been attested by any witness. The only part of the contents testified to is the words, "to my nephew, William W. Cantway." Slater testified that Noel said, "Everything belongs to Will when I am gone," but not that there was any such language in the will or that there was any language in the will except the words, "to my nephew, William W. Cantway." The utmost extent of Slater's testimony is that Noel showed him a paper which Slater calls a will, containing the words, "to my nephew, William W. Cantway." There is nothing connecting that paper with the instrument sealed in an envelope after Noel's death. He had that will in his possession at the time but there is no evidence that it was the paper which Slater saw. There is no evidence when the change on the face of that instrument was made,—whether before or after August, 1898. While this will remained in Noel's possession for many years there is no evidence that Slater ever saw it. Noel may have changed his will frequently from time to time, and the document which Slater testified to seeing may have been one of those wills or a memorandum or draft of a will. There is nothing to identify it with the particular instrument which is now the subject of this controversy.

William Barker testified that he knew and was on friendly terms with Noel Cantway and was in and around his barber shop a good deal. He heard Noel say something about a will. Noel had it out on a little table there and picked it off his table and read it. Barker heard him read it. He read William W. Cantway's name, C. H. Lisman and Jim Kirby. Barker saw the will in Noel's hand and saw him lay it down on the table. It was written with a pen. This evidence does not prove anything. It does

not even prove there was a will. Barker did not read it, and the reading of it by Noel to him, if he did read it, was no more than the testator's declaration as to its contents. Barker's testimony was erratic, loose, desultory and irresponsible, and his memory, if he had any memory, was so uncertain that no reliance could be placed in his statements.

The plaintiff in error contends that even had there been no proof of the name obliterated, the will should have been admitted to probate and the erased words treated as blank. The testator had six nephews, and it can hardly be successfully contended that a devise to "my nephew" when the testator had six is the same as a devise to "my nephew," naming him. The failure to prove the name of the devisee was a failure as to a material part of the will.

It is argued that the will having been destroyed by the administrator, who was an heir and would be benefited by its destruction, slight evidence in proof of its contents will be sufficient. The circumstances of the destruction of the will show that it was innocently caused, with the consent of the sole apparent devisee and legatee and without any improper motive. A copy was preserved and upon his request was furnished to the plaintiff in error. The explanation of the destruction of the instrument is consistent with an honest purpose, and in any event the presumption that the production of the original would afford an inference unfavorable to the defendants in error is a presumption of fact, only, and is not sufficient to establish the plaintiff in error's claim without proper evidence. As we have seen, this evidence is lacking.

The judgment is affirmed.      *Judgment affirmed.*