In the Matter of ALLEN H. AINSCOW's Purported Will.

(*July* 14, 1942.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

4

*Ivan Culbertson* for Jennie M. Ainscow, Widow; *Walter J. Willis* and *Caleb R. Layton, 3d,* for certain heirs at law, appellants.

*William Poole, Malcolm B. Petrikin* (of Chester, Pennsylvania), *Harold B. Howard* and *Joseph A. L. Errigo* for certain legatees under the will, appellees.

Superior Court for New Castle County, May Term, 1942.

LAYTON, Chief Justice:

This is the second appeal from a decree of the Register of Wills for New Castle County admitting to probate a paper writing purporting to be the last will and testament of Allen H. Ainscow, deceased.

Upon the first appeal, an issue of devisavit vel non was directed by the court. The paper writing introduced consisted of three typewritten pages. The first page, in pale print, contained the usual prefatory language, and some of the dispositive clauses. The second page, in dark and bold print, contained the remainder of the testamentary dispositions, the appointment of executors, the date, signature, seal and a portion of the usual attestation clause. The third page, in print similar to that of the first page, contained only the remainder of the attestation clause and the signatures of the two attesting witnesses. The same typewriter undoubtedly was used in the typing of the three pages, but a different ribbon was used in the typing of the second page.

From the arrangement of the instrument it was apparent that a second page could readily have been typed, signed

by the deceased, and substituted for the original second page; and, without close examination, the instrument as changed by the substituted page, would appear to be the same instrument formally executed before the attesting witnesses. It was abundantly proved, and finally admitted by the appellees, that the second page of the paper writing admitted to probate had been substituted for the original second page without the formality of the re-execution before testamentary witnesses; and the probate was revoked. In re Ainscow's Purported Will, 2 *Terry* (41 *Del.*) 148, 17 A. 2d 227.

Thereafter, certain of the residuary legatees under the purported will, alleging that the executors named therein had not attempted the probate of the instrument in its original form, petitioned for its admission to probate by tendering proof of the first and third pages, and of the contents of the original second page, as having been lost or destroyed, except as to the executors named therein of whose identity there was no available proof; and they prayed for the issuance of letters of administration cum testamento annexo.

Against objection, probate was allowed; and the widow of the deceased and certain of his heirs at law appealed.

It was, of course, incumbent on the appellees, as proponents, to prove the due execution and contents of the original instrument. The authenticity of the first and third pages is not questioned; the dispute is concerned with the contents of the original second page. The appellees contend that the contents of the second page of the paper writing are precisely the same as those of the original second page except as to the executors named; and in support of this contention three witnesses were called.

The typist who, as it is claimed, prepared the original paper writing, testified that, in the fall of 1937, while working for a certain real estate company in Wilmington, she

typed a will for the deceased; but when shown the instrument offered for probate, she was entirely unable to identify it, or any part of it, as her work. Nor could she recall how many pages the instrument contained, or anything in relation to the condition of the ribbon of the typewriter used by her.

The surviving attesting witness testified that in October of some year not remembered by him, about eight o'clock in the evening, he and the other attesting witness went to the house of the deceased at his request, and there the deceased asked them "to sign a will"; that the deceased had in front of him "a paper like a will", consisting of more than one sheet "fastened together just like a legal paper is fastened together"; that he saw the deceased sign his name on a paper "clipped together" with other papers; that he and the other witness signed their names, and left the house together; that shortly after they were called back and were told that they had made a mistake and had signed their names on the wrong sheet; and that they then signed their names on the last sheet, but without examining the instrument at all or looking over any part of it.

Reconstructing the situation within the limits of the testimony, it is reasonably clear that the attesting witnesses first signed their names on the second page where the signature of the deceased appeared, and later, when called back, they again signed their names more properly on the third or last page at the end of the attestation clause, but without ascertaining whether the second page of the instrument was, in fact, the same page on which the deceased and they had signed their names. It is reasonable, however, to assume that the second page of the instrument had not been changed in any way in the short interval of time, and formal execution would appear to have been accomplished.

There remains, however, the more difficult question

whether satisfactory proof of the contents of the original second page was made. Another typist, upon whose testimony the appellees rely, testified that in November, 1937, she was employed in the same real estate office as the first-mentioned typist had been, and that shortly after her employment she changed the ribbon on the typewriter; that in the spring of 1937 the deceased handed to her a single typewritten sheet saying that it was a "page from his will" which he wished to have retyped with "a change in the name or names of the administrators" but no other change; that she retyped the page in accordance with her instructions and returned the page given to her and the page typed by her to the deceased. She identified the second page of the instrument as her work "because the names look familiar and the change is made at the bottom of the page". But she never saw the will as a whole, remembered nothing of the provisions of the page handed to her for copying; and, on cross-examination, was entirely unable to recall whether the page from which she copied contained written signatures, which the original second page undoubtedly did.

The admissibility of the deceased's statement to the witness that the page handed to her was a page from his will was objected to as hearsay. Whether post-testamentary statements made by a testator as to the contents of a will are admissible at all is a much controverted question. Since *Sugden v. Lord St. Leonards,* L. R. 1. Prob. Div. 154, the courts in increasing numbers have departed from the rule of exclusion, and have in general invoked a special exception to the hearsay rule in order to admit such declaration. In 6 *Wigmore on Evidence,* § 1736, it is said that it is not clear to what extent this exception would be carried, its recognition apparently being dependent on the circumstances of trustworthiness appearing in each case.

While the weight of current authority is in support of the view that declarations of a deceased testator are admis-

sible in evidence in proof of the contents of a lost will, it is doubtful, at the least, whether the contents can be proved solely by such declarations. *Clark v. Turner,* 50 Neb. 290, 69 N. W. 843, note 38 L.R. A. 443; *Ferguson et al v. Billups,* 244 Ky. 85, 50 S. W. 2d 35; *Cantway v. Cantway et al.,* 315 Ill. 244, 146 N. E. 148.

The case for the proponents of the will rests solely on the statement of the deceased that the page handed to the typist was a page from his will. At best the statement is equivocal. One may speak of an unexecuted instrument as his will. No doubt the deceased would have referred to the instrument as changed by the illegal substitution of the second page as his will; and if he had prepared a second page to be copied by the typist, he probably would have referred to it loosely as a page of his will.

To establish a lost will, it is necessary to prove the legal existence of the will as required by the statute, its loss or unintentional destruction, and its contents. *Butler v. Butler,* 5 *Harr.* 178. No testimony was given with respect to a search or any effort made to find the original second page, proof of which ordinarily is required. See *Dawson v. Smith et al.,* 3 Houst. 335. But this failure of proof is not important in view of the conclusion that must be reached. The burden of proof was, of course, on the proponents. The proof of contents of a lost or destroyed will must be clear and satisfactory. 1 *Underhill, Wills,* § 275; 68 C. J. 1033. The court ought not to act on conjecture or even probability. *Davis v. Sigourney,* 8 *Metc.* (*Mass.*) 487. The situation disclosed by the record is delicate and dangerous, opening the door to invasions of the statute of wills and perpetration of fraud.

The contents of the second page of the deceased's will were not satisfactorily proved; and the decree of the

Register must be reversed, with the direction that the probate of the instrument be revoked.