JOHN W. SLINGLOFF et al.

v.

MABELLE BRUNER et al.

*Opinion filed October 24, 1898.*

1. WILLS—*verdict in will case has same force as verdict at law.* The verdict of a jury in a contested will case has the same force as a verdict in a common law case, and will not be set aside by an appellate tribunal unless manifestly against the evidence.

2. SAME—*proponents in will contest should offer all their affirmative testimony in chief.* Opinions of witnesses, called by proponent, as to the testamentary capacity of the testator, based upon a hypothetical question, should be given in chief, but it is not reversible error to permit them to be given in rebuttal.

3. SAME—*certificate of oath of witnesses at first probate is admissible on contest.* Under the statute (Rev. Stat. 1874, p. 1102,) the certificate of the oath of the witnesses at the time of the first probate is admissible in a subsequent proceeding to contest the will, and is entitled to such weight as the jury may give it.

174—36

4. SAME—*competency of witness to attest will is determined as of the date of attestation.* The competency of a witness attesting a will is to be determined by the state of facts existing at the time of the attestation, and not by that existing at the time the will is offered for probate, or when interested parties seek to contest the will.

5. EVIDENCE—*proponent may show that testator regarded devisee with affection.* Letters written by the testator to his devisee are admissible in a proceeding to contest the will, as tending to show the affection of the former for the latter, the presumption being in favor of the validity of a will providing for one with whom the testator has maintained affectionate relations.

6. SAME—*one offering letters in evidence is not compelled to read them in entirety.* Permitting one offering letters in evidence tending to show the affectionate relations existing between the testator and his devisee, to read extracts therefrom, is not error, as, the whole letters being in evidence, the other party may read them in their entirety, if he desires.

7. SAME—*admissibility of certificate of husband's oath at probate in contest proceeding by wife.* The husband of the testator's sister, who takes no interest under her brother's will as devisee, legatee, heir or executrix, is competent to attest the will, and the certificate of his oath at the time of the probate of the will is admissible in a contest in chancery to which his wife is a party complainant.

8. INSTRUCTIONS—*effect of instruction that burden of proof in will contest shifts.* An instruction that the burden of proof shifts, in a will contest, upon the proponent's making a *prima facie* case, is inaccurate, as the jury are to determine, from the whole evidence, whether the instrument offered is the will of the testator; but such an instruction will not reverse unless apparently misleading.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN H. MOFFATT, Judge, presiding.

TIPTON & TIPTON, for appellants.

FRANK B. MCKENNAN, and MCGLASSON & BEITLER, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This was a bill in chancery, filed in the circuit court of McLean county, to set aside the will of Nicholas R. Slingloff, deceased. The bill charges lack of testamentary capacity on the part of the testator and undue influ-

ence exerted upon him by the appellee Mabelle Bruner. Issues in chancery were made as provided by the statute, submitting to the jury the two questions of testamentary capacity and undue influence, and upon the trial of the cause a verdict was returned finding in favor of the validity of the will. A motion for new trial was overruled by the court and a decree entered finding that the will in question was the will of Nicholas R. Slingloff, whereupon this appeal was prosecuted.

The principal reason urged by appellants for the reversal of the decree of the chancellor in this case is, that the testator, at the time of the execution of the will in question, did not possess sufficient testamentary capacity to execute such will.

Nicholas R. Slingloff was an unmarried man, aged about thirty-nine years, who had resided most of his life in or near the village of Arrowsmith, in McLean county. The will in question bears date October 13, 1897. The testator died unmarried and without issue, on the third day of November of the same year. The testator had been for a number of years in poor health. About nineteen years before his death he received a severe injury to his side, which, as time progressed, necessitated three surgical operations,—two in Bloomington and one in Chicago. This left him for a number of years prior to his death much reduced in strength and emaciated in appearance, and for some time previous to his death he was not physically capable of giving his personal attention to his business. He was a druggist, owning a one-half interest in a drug store in Arrowsmith, the other half interest of which was owned by George F. Lester, one of the appellees herein. The three surgical operations mentioned had all been performed in the winter and summer of 1897,—one in February, one in June and the last one the 15th day of October, two days after the will in question was executed. The testator left at the time of his death his mother, two brothers, three sisters and

some nephews and nieces, all complainants in the original bill. By his last will and testament, the validity of which is questioned, he devised one-half of his interest in the drug store to his partner in business, George F. Lester, in consideration of the payment to his estate of $2300, and after the settlement of all his indebtedness his estate, both real and personal, was to be divided equally between his mother and Mabelle Bruner. The latter was not related to him, but it is apparent from the record that he entertained for her feelings of affection, although it is not certain from this record that an engagement of marriage existed between them. She was with him most of the time during his last illness. The will in question was prepared by Hubert J. Thompson, an attorney, at the home of the testator, a short time before the performance of the last operation which resulted in his death. It was witnessed by Thompson and David L. Snoddy, the husband of a sister of the testator, and these two parties and George F. Lester were the only ones present at the execution of the will.

The proponents, in order to establish the validity of the will, offered the testimony of Hubert J. Thompson, whose evidence was, that he was called to the house where the testator was lying ill and received from him directions as to the disposition of his property, and that George F. Lester was present at the time, with other persons during a portion of the time. He testifies that he told the testator that he was called there, and, as he states, the testator said he wanted Lester to take his interest in the drug store at $2300, and wanted a mortgage on his father's farm paid, and the interest thereon, and the expenses of his sickness, and the balance was to be equally divided between his mother and Mabelle Bruner. He states there was some conversation between the testator and himself as to whether a bill of sale of the drug store should be made or whether the terms should be incorporated in the will, and it was put in the will, and the

will drawn as directed by the testator and read to him. He also directed who should be the executor, and said he wanted his partner to attend to his business and be appointed executor.    There was also offered the certificate of the oath of the witnesses at the time of the first probate.    This evidence was objected to and the objection overruled, and the complainants excepted.    Certain letters were offered in evidence which we apprehend to be in the handwriting of the testator, and extracts therefrom were read. These letters were addressed to Mabelle Bruner, one of the legatees.    This was substantially all the evidence offered by the proponents in support of the validity of the will.

The testimony of the attending physician, and of a consulting physician who was called in in the afternoon of the day on which the will was drawn, and who described the testator's physical condition and the fact of the frequent and long continued administration of morphine to allay pain, was, that at the time of the execution of the will the testator was incapable of transacting business or of reasoning on business matters; that his temperature was very high, which had a depressing effect on his brain, tending to cause an exhaustion and enfeeblement of the entire intellectual powers with the physical. Eleven other witnesses were called who testified as to his physical condition.    Many of these witnesses had, just prior to the time of the execution of this will, called at the house where the testator was lying, and from their testimony it is apparent he was at the time suffering great pain and made no attempt to engage in conversation in any manner.    Some of the testimony is based on the opinions of the witnesses as to his condition without conversation with him.    Some testified they did not believe he was in a condition to transact business.    Others found him suffering pain and did not engage in conversation, and say he was effusive in his manner towards them, which caused them to reach the conclusion that he

was in very poor condition and unable to transact business. Others had but little conversation with him and saw that he was in an enfeebled condition, lying quietly, and they formed an opinion that he was in a poor condition and unable to transact business. Certain witnesses were called by the complainants as experts, who, on a hypothetical question stating his condition being put to them, testified that in their opinion he would not be in a condition to transact business. George F. Lester, who was appointed executor, testified that at the time testator made the will he did not think he was in a condition to transact any business or make a will.

This testimony as to the testamentary capacity of the testator, offered by the complainants, is exceedingly unsatisfactory and uncertain as against the fact, clearly appearing, that the testator, when roused up, not only thoughtfully inquired of his partner if he would take his interest in the store at $2300,—a matter on which they had previously conversed and substantially agreed as to the terms,—but also suggested the reciting in the will of the terms on which the store was to be taken by his partner, after discussing with the attorney who drew the will whether a bill of sale would be necessary. It appears he also recollected and provided for the payment of a mortgage resting upon the farm of his father, and determined the description of the land, and caused the will to be drawn so as to express his intentions, and directed what was to be done with the residue of his estate, and called attention to the fact that there was no executor appointed, saying that he desired his partner, George F. Lester, to be executor of his will. In a contested will, under the provisions of the statute, the verdict of a jury rests upon the same basis and is to be treated by an appellate court in the same way as the verdict of a jury in a common law case, and should not be set aside by an appellate tribunal unless it is manifestly against the weight of the evidence. *Shevalier* v. *Seager*, 121 Ill. 564; *Moyer* v. *Swygart*,

125 id. 262; *Greene* v. *Greene,* 145 id. 264; *Buchanan* v. *Mc-Lennan,* 105 id. 56.

Certain expert witnesses were called by the proponents of the will in rebuttal, and a hypothetical question was put to them, on which they based an opinion that the testator was competent to execute a will.   A principle is, that the proponents of a will should offer all their testimony in support of their contention that is matter in chief, in the first instance, and after the contestants have closed their proof the proponents may offer testimony only to the extent that it rebuts the testimony of their adversaries.   This testimony offered in rebuttal was the opinions of witnesses as to the testamentary capacity of the testator based on a hypothetical question, and should have been given in chief.   Whilst it was improper to offer it as evidence in rebuttal, still that fact, of itself, is not reversible error.   (*Craig* v. *Southard,* 148 Ill. 37.)   On contesting the validity of a will by a proceeding in chancery under section 7 of chapter 148 of the Revised Statutes, the certificate of the oath of the witnesses at the time of the first probate should be admitted as evidence and have such weight as the jury should think it may deserve, by express direction of the statute.   It was not error to overrule complainants' objection to that evidence on that ground.

Complainants objected to the admission in evidence of the letters shown, which had been written by the testator to one of the legatees, Mabelle Bruner, and the reading of extracts therefrom.   The letters in their entirety were offered, but all of the letters were not read. Where a letter is offered in evidence particular parts of which are desired by the party offering the same to go before the jury, he may read that part of the letter to the jury, and is not required to read the whole letter.   The other party has the right to read the entire letter, if he so desires.   These letters were properly admissible as evidence to show the relations existing between the lega-

tee and the testator. The affections of the latter for the
former may be shown, as the presumption is in favor
of the validity of the will when the person provided for
therein is one with whom the testator has maintained
intimate and affectionate relations during his life. (*Harp*
v. *Parr*, 168 Ill. 459.) These letters, showing the affection
and intimate relations existing between the testator and
the legatee Mabelle Bruner, were properly admitted in
evidence, and the reading of extracts therefrom by the
proponents of the will, and their failure to read the whole
of the letters, was not error, as the contestants had
the right to read the other parts of the letters if they
so desired, as the whole of the letters were in evidence
before the jury.

David L. Snoddy, one of the subscribing witnesses to
the will, was the husband of Sarah E. Snoddy, one of the
contestants, and although not called as a witness in this
proceeding the certificate of the oath of the witnesses at
the time of the first probate,—and he was one,—was ad-
mitted in evidence, and it is insisted by contestants that
this was error, the contention being that the evidence of
the husband could not be received as against the wife.
The principle is, that the competency of a witness to
a will, like evidence of the capacity of the testator, is
tested by the status of the witness at the time the will
was executed. The weight of modern authority is in fa-
vor of the proposition that the competency of a witness
attesting a will is to be tested by a state of facts exist-
ing at the time of the attestation, and not by the state
of facts existing at the time the will is presented for pro-
bate, nor by the state of facts existing at the time when
interested persons may, by a bill in chancery, seek to
contest the validity of the will. (*Fisher* v. *Spence*, 150 Ill.
253.) By this will the testator sought to dispose of his
property and effects of every character, making his
mother and Mabelle Bruner the legatees, and making
Lester the executor. The complainant Sarah E. Snoddy,

although a sister of the testator, was not named in the will in any capacity. He sought to dispose of his property by devising it and leaving nothing to descend to an heir, and so far as the will was concerned Sarah E. Snoddy had no interest as legatee or heir, nor did she appear as executrix. Her husband, David L. Snoddy, was therefore a competent witness at the time of the attestation of the will and at the time it was admitted for probate. The statute expressly provides that the certificate of the oath of the witnesses on the first probate of a will is competent evidence on a contest of the will in a court of chancery. The only way in which David L. Snoddy is connected with this record is as a witness. We are of the opinion, therefore, that it was not error to admit the certificate of his oath in evidence, and that he was a competent attesting witness to the will.

It is urged that the testimony of one subscribing witness and the certificate of the oath of the witnesses at the time of the probate are insufficient to make a *prima facie* case as to the validity of the will. The general rule in this country is, that a will may be established by only one of the attesting witnesses, if he can testify to a compliance with the statute relating to its execution. (*In re Page*, 118 Ill. 576, and authorities cited.) The contention of appellants that this evidence was not sufficient to make a *prima facie* case was expressly decided adversely to them in *Buchanan* v. *McLennan, supra.* See, also, *Harp* v. *Parr, supra.*

It is insisted by appellants that the first instruction for the proponents was error. That instruction states that the burden of proving the testamentary capacity of the testator is primarily upon the proponents, and they are required to show, by a preponderance of the evidence, that the instrument offered in evidence was signed by the testator, or by some person in his presence by his direction, and that in his presence and by his direction it was attested by two or more witnesses; and when

the testimony of the subscribing witnesses is given in or the oath of the subscribing witnesses is attached to the writing and offered in evidence, the competency of the testator and the fact of so signing and attesting are established by the evidence and a *prima facie* case is made out, and the burden of proof then shifts to those who seek to contest the validity of the will, and unless the evidence offered by the contestants overcomes the *prima facie* proof thus made the will must be held valid. The burden of proof does not shift on the trial of a bill contesting a will, and this instruction was technically inaccurate. The jury are to determine from the whole evidence whether the instrument offered was the will of the testator. Whilst the instruction is technically inaccurate it is apparent it could not have misled the jury and is not cause for reversal.

Appellants say in their brief: "Other of proponents' instructions are objectionable. The court refused several instructions asked by complainants that should have been given." They do not point out which of proponents' instructions are objectionable, or any objection thereto, nor show wherein there was error in the reversal of instructions. This general objection thus made in the brief does not present for our consideration which of the eleven instructions given for proponents was erroneous, or why the refusal of the six instructions was error.

The evidence of the proponents of the will, standing alone, was sufficient to authorize this verdict, and the evidence of the contestants is so unsatisfactory that we are satisfied the verdict should not be disturbed.

We find no reversible error in this record, and the decree of the circuit court of McLean county is affirmed.

*Decree affirmed.*