(No. 13301.—Reversed and remanded.)

JOHN DONOVAN, Appellant, *vs.* THE ST. JOSEPH'S HOME *et al.* Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 20, 1920.*

1. WILLS—*when unsoundness of mind is presumed continuous—instruction.* Proved unsoundness of mind which is of a permanent and progressive nature and not occasional or intermittent is presumed to exist until the contrary is shown, and the jury may be so instructed in a will contest case where a physician has testified that such was the mental condition of the testator.

2. SAME—*proponent must offer all evidence of sanity as evidence in chief.* In a proceeding to contest a will the proponent has the burden of proof and the right to open and close the argument, and must offer in chief not only the evidence making a *prima facie* case, but all other evidence relating to the issue of testamentary capacity.

3. SAME—*burden of proof in will contest proceeding is always on proponent.* Although a proponent in a will contest case has made out a *prima facie* case the burden of proof does not shift to the contestant but is always on the proponent, as the jury must determine from the whole evidence whether the instrument offered is the will of the testator.

4. SAME—*contestant must prove his charge of fraud or undue influence.* After the proponent has made a *prima facie* case in favor of the will the contestant must prove his charge of fraud and undue influence, and where a jury has found in favor of the validity of a will the Supreme Court will not set aside the verdict on the facts unless it is against the clear preponderance of the evidence.

5. SAME—*what understanding is necessary to make a will.* It is not a sufficient test of testamentary capacity that the testator understand what he is doing when making a will, but he must have mind and memory sound enough to appreciate the business in which he is engaged, to comprehend what property he has to dispose of and the natural objects of his bounty and to understand the nature of his act and the effect of his will.

6. SAME—*executor must defend will in contest after probate.* In a suit to set aside the probate of a will the jury may be instructed that it is the duty of the executor to sustain the document and establish it as a will.

7. SAME—*when instruction as to presumption of sanity is erroneous.* In a will contest case it is error to instruct the jury that

"the law presumes that every person of legal age has sufficient mind and memory to make a valid will, and casts upon those who contest a will the burden of establishing by the greater weight of evidence that the person seeking to make the will was not at the time of a sufficiently sound mind to make a valid will."

8. SAME—*term "burden of proof" has two distinct meanings.* The term "burden of proof" in one sense expresses the burden of the party who has the affirmative of the issue and must ultimately establish such affirmative, but in another sense the term expresses the duty of a party to offer evidence at any particular stage of the proceedings in order to prevent an adverse judgment.

APPEAL from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding.

KIRK & SHURTLEFF, for appellant.

FRANK J. QUINN, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, John Donovan, son and heir-at-law of Patrick Donovan, deceased, filed his bill in this case in the circuit court of Peoria county to set aside the probate of the will of Patrick Donovan, making the beneficiaries of the will defendants and charging a want of testamentary capacity and undue influence of certain beneficiaries of the will. Upon a trial the court withdrew the issue of undue influence from the jury and the remaining issue was found for the defendants. A motion for a new trial having been overruled, a decree was entered finding that the instrument in question was the last will and testament of Patrick Donovan and dismissing the bill for want of equity.

Patrick Donovan was the owner of a small farm of 54.97 acres near Mansfield and a house and lot in Rantoul. By the will he directed his executor to sell all his real estate and personal property and after the payment of funeral expenses and the costs of a suitable monument, to distribute the same, one-seventh to each of his two sons and two

daughters, one-seventh to the St. Joseph's Home at Peoria and one-seventh to each of two occupants of the home, who were husband and wife and one of them a distant relative. He was an occupant of St. Joseph's Home, which was maintained for aged people, and he lived there from about 1907 until the execution of the will, on February 21, 1916, and until his death, on October 30, 1917, but during that time spent some time up to the summer of 1915 at Rantoul or Urbana with members of his family. His age at the time of executing the will is somewhat uncertain but he was about ninety-seven years old. The defendants, who are proponents of the will, proved its due execution in accordance with the statute and offered testimony of a number of witnesses, nearly all of whom were occupants of St. Joseph's Home and had observed the testator during all or a part of his residence there. These witnesses testified that the testator went about the city, bought tobacco and minor supplies, cleaned spittoons, shaved himself most of the time and played forty-five, seven-up and euchre, and that they did not observe any want of intelligent understanding. Their opinion was that he was of sound mind and memory at the time the will was made. There was no contradiction of this testimony nor of the testimony introduced by the complainant, who produced a considerable number of witnesses who had known the testator at Rantoul and Urbana. These witnesses detailed facts from which a fair inference would be that he was not possessed of testamentary capacity, among other things that he did not know the house where he lived in Urbana in the spring of 1915; that about that time he went into an adjoining house with a bucket of water and thought he was at home but finally concluded that he was lost and was taken home; that he engaged a workman to replace a foundation under his house at Rantoul in 1914, and when the man came with two loads of brick and a load of sand to do the work he had other men doing it and had forgotten his contract; that he went

to a bank and wanted to draw $2000 to buy a farm when he had but little money in the bank and was satisfied to take $10 or $20 to make a first payment on the farm, and that on account of his condition an inmate of the county house, called "The Dutchman," was employed in the spring of 1915 to watch him and follow him about during the day when his son was not at home. There was also testimony that what he had said about his treatment by the wife of Mike Donovan and profanity by her was untrue. One of the witnesses for the defendants testified that the testator told him that he had five children when in fact he had only four. Among the witnesses for the complainant was a physician who treated the testator at Urbana late in the summer of 1914 and afterward and knew and observed him until the following June of 1915. He testified that Donovan was about ninety-four years of age when he treated him and was in an advanced stage of senility; that his mental condition was in an advanced stage of impairment; that he wandered away and got lost, and the witness, with others, had a man appointed to look after him; that the city officers were engaged at one time in hunting him and found him outside the town, in a field; that he was incoherent and unable to finish sentences, not able to answer questions and mentally incompetent and irresponsible; that he did not realize the nature and extent of his property; that his condition would gradually become worse and his mental condition become more impaired as the result of degenerations in his body; that the cause of his mental condition was senile dementia and his condition was permanent and progressive. It was his opinion, as well as that of the other witnesses for the complainant, that the testator was not of sound mind and memory or possessed of testamentary capacity up to and including the spring of 1915.

Based on the testimony of the witnesses for the complainant, and particularly that of the physician, the court was asked by the complainant to instruct the jury that if

they believed that at any time before the execution of the will Patrick Donovan was afflicted by senile dementia, and that said affliction rendered him of unsound mind and memory at that time, and that said unsoundness of mind was then of a permanent nature, then in that state of the proof the law presumed that unsoundness of mind continued until the contrary was proved, but the court refused to give the instruction. If the testimony of the physician was believed by the jury the mental condition of the testator was permanent and progressive in its nature, and the presumption of law is that such a mental condition, not occasional or intermittent, continues to exist until the contrary is shown. (*Trish* v. *Newell*, 62 Ill. 196; *Todd* v. *Todd*, 221 id. 410; 1 Greenleaf on Evidence, sec. 42.) The instruction contained in the hypothesis all the elements required by the law, and the complainant was entitled to have the jury informed of the presumption to enable them to determine whether there had been a change in the mental condition of the testator.

The court gave to the jury, at the instance of the defendants, the following instruction:

"You are instructed that the law presumes that every person of legal age has sufficient mind and memory to make a valid will, and casts upon those who contest a will the burden of establishing by the greater weight of evidence that the person seeking to make the will was not at the time of a sufficiently sound mind to make a valid will."

This instruction stated, without qualification and without reference to the rule that the proponents of the will must first make a *prima facie* case of testamentary capacity, that the law presumed the testator to be of sufficiently sound mind to make a valid will, and it virtually told the jury that the law settled that question in favor of the validity of the will. There is no view of the law that would justify the giving of such an instruction. It is not a requirement of the system for advising juries of the rules

295–9

of law that a single instruction should contain a full and complete statement of the law as applied to an issue, and the theory is that jurors will piece together the separate instructions so as to make such a complete statement. Instructions may supplement each other in some particulars, but it is error to give to a jury a partial statement of the law, which is likely to mislead.

It is perhaps quite natural that there should be some misunderstanding as to the application of the general presumption of sanity in the case of the contest of a will in chancery arising from the double meaning of the term "burden of proof" and its application to a case of that kind. The term "burden of proof" is used with different meanings. In one sense the term expresses the burden of the party who has the affirmative of the issue and must ultimately establish such affirmative, but in another sense the term expresses the duty of a party to offer evidence at any particular stage in order to prevent an adverse judgment. That duty is cast upon the party against whom the decision would be if no further evidence were offered. (*Bartelott* v. *International Bank*, 119 Ill. 259.) In view of the different meanings attached to the term it seems advisable to bring together the decisions on the subject relating to will contests.

The question which party has the burden of proof first came before the court in *Rigg* v. *Wilton*, 13 Ill. 15, and the court there said that the Illinois statute had been adopted from Kentucky, where it had been interpreted, and the same interpretation was applied. It was held that on the trial of an issue under the statute the burden of proof is on the party affirming the execution and validity of the will, and consequently he has the right to open and conclude the case; that the issue is to be submitted to the jury as a new and original question, without regard to the fact that the instrument has been admitted to probate, and while the certificate of the oaths of the witnesses at the time of probate

may be offered in evidence by either party, it is to receive such weight, only, as the jury may think it deserves in connection with the other proof in the case. This rule has never been changed but has been repeated in many cases. (*Tate* v. *Tate,* 89 Ill. 42; *Moyer* v. *Swygart,* 125 id. 262; *Purdy* v. *Hall,* 134 id. 298; *Bevelot* v. *Lestrade,* 153 id. 625; *Bardell* v. *Brady,* 172 id. 420; *Egbers* v. *Egbers,* 177 id. 82; *Hart* v. *Hart,* 290 id. 476.) That burden never shifts from one party to the other. (*Slingloff* v. *Bruner,* 174 Ill. 561; 10 R. C. L. 897; 16 Cyc. 926.) In *Egbers* v. *Egbers, supra,* the court said: "The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial in order to make or meet a *prima facie* case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof,—meaning the obligation to establish the truth of the claim by a preponderance of evidence,—rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails. This burden of proof never shifts during the course of a trial but remains with him to the end."

The burden of proof is on the proponent of a will to prove that the will was in writing and signed by the testator or by some person in his presence and by his direction and was attested in his presence by two or more witnesses, and that the testator was of sound mind and memory at the time of signing or acknowledging the same; and this is sufficient to establish *prima facie* the validity of the will. It is the duty of the proponent of a will to offer in chief not only the evidence making a *prima facie* case, but all other evidence relating to the issue of testamentary capac-

ity; (*Craig* v. *Southard*, 148 Ill. 37; *Slingloff* v. *Bruner*, *supra;* *Albrecht* v. *Hittle*, 248 Ill. 72;) and it would be absurd to say that the burden of proof shifts and passes to the defendants in the midst of a proponent's evidence in chief. In the sense, however, that in considering the evidence the proponent is entitled to the presumption of testamentary capacity, it has frequently been said by the court that the proponent is entitled to the benefit of such presumption, and the evidence for the contestant must be sufficient to neutralize and overcome the evidence offered by the proponent and the added presumption. Sanity is the rule and insanity the exception, and all men are presumed to be of sound mind until the contrary is proved, and, as has been said, the law throws the weight of the legal presumption in favor of sanity into the scale in favor of the proponent. The decisions have been that when affirmative evidence is offered of testamentary capacity the contradictory testimony must be sufficient to overcome or neutralize the effect not only of such affirmative evidence, but also to overcome or neutralize the presumption arising from the general rule of law that all men are presumed sane until the contrary is proved, and in weighing the conflicting proofs the proponent of a will is entitled to the benefit of that presumption. (*Carpenter* v. *Calvert*, 83 Ill. 62; *Wilbur* v. *Wilbur*, 129 id. 392; *Purdy* v. *Hall*, *supra;* *Graybeal* v. *Gardner*, 146 Ill. 337; *Hollenbeck* v. *Cook*, 180 id. 65; *Huggins* v. *Drury*, 192 id. 528; *Waters* v. *Waters*, 222 id. 26; *Wilkinson* v. *Service*, 249 id. 146.) The rule declared is, if the *prima facie* case is made, that in the final decision upon the whole case the contestant will fail unless the preponderance of the whole evidence as to testamentary capacity is on his side. An instruction containing a statement of the law in harmony with these decisions would be proper, but an instruction which substantially advises the jury, without qualification and regardless of the question whether a *prima facie* case has been made, that the law

settles the question in favor of testamentary capacity should not be given.

The court gave at the request of the defendant an instruction which, after stating the rule as to testamentary capacity, advised the jury as follows:

"If you find from the evidence in this case that Patrick Donovan, at the time it is claimed he executed exhibit No. 1 offered in evidence, did execute it by signing with his mark in the presence of at least two attesting witnesses, who in his presence and in the presence of each other, at his request, signed their names as witnesses to his such act, and you believe that he then and there had sufficient mental capacity to understand what he was doing and that he intended to make his will, and that he knew the natural objects of his bounty and what property he had, then he, Patrick Donovan, was possessed of sufficient mental capacity to make a valid will; and if, after a full consideration of all the facts in this case, you find he had at the time the mental capacity above indicated, and that he knowingly and intentionally signed such instrument as and for his will in the presence of at least two witnesses, who at his request and in his presence and in the presence of each other signed the same as subscribing witnesses, then it would be your duty to find for the proponents in this case."

This instruction directed a verdict if Patrick Donovan had sufficient mental capacity to understand what he was doing and intended to make his will, and knew the natural objects of his bounty and what property he had, and executed the instrument with the formalities required by law. The verdict for the defendants would naturally follow, because there was no question but that the testator knew what he was doing and that he intended to make a will and knowingly and intentionally signed it. But that is not the measure of capacity required to make a valid will. It is not sufficient that the testator understand that he is making a will, but he must have mind and memory sound enough to

appreciate the business in which he is engaged. He must comprehend what property he has to dispose of and the natural objects of his affection and bounty, and understand the nature of his act and the effect of his will. (*Trish* v. *Newell, supra; Meeker* v. *Meeker,* 75 Ill. 260; *Freeman* v. *Easly,* 117 id. 317; *Craig* v. *Southard,* 148 id. 37.) That is the meaning of the statement in *Todd* v. *Todd, supra,* that the testator must at the time of executing the will know and understand what he is about. This instruction set up a standard far below that fixed by the law and directed a verdict, and it could not be cured by any other.

Complaint is made that the court gave an instruction that it was the duty of the executor to sustain the document and establish it as a will, but there was no error in giving that instruction.

Complaint is also made that the court permitted an attorney to testify to communications by the testator which were privileged. The witness had been solicitor for the testator in 1907 in a bill filed to set aside a trust deed, and the bill and decree in the case had been admitted in evidence. The solicitor related the facts stated by the testator incorporated in the bill, which was already in evidence, and the court did not err in overruling the objection.

The court did not err in withdrawing the issue of undue influence from the jury, as there was no evidence tending to show that anyone connected with St. Joseph's Home exercised or attempted to exercise any influence whatever over the testator.

It is urged in support of the decree that, notwithstanding errors committed on the trial, the decree should be affirmed because justice was done. This is not a case where that can be said.

The decree is reversed and the cause remanded.

*Reversed and remanded.*