(No. 19012.—

SILAS M. DIAL *et al.* Appellants, *vs.* WILL P. WELKER *et al.* Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

510

BROWN & BURNSIDE, and CARL E. ROBINSON, for appellants.

HOGAN & REESE, JOHN A. MATHENY, and JUNE C. SMITH, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from the decree of the circuit court of Fayette county sustaining the will of Joseph Welker, deceased. A hearing was had on a bill to contest the will on the ground of mental incapacity of the testator and undue influence on the part of the beneficiaries. The decree was

entered on the finding of a jury that the will was the will of Welker.

This cause was in this court on a former review, (328 Ill. 56,) where the testimony was reviewed. The evidence in this case is practically the same as on the former hearing. It was stipulated at the commencement of the second trial that either side might read into the record the testimony of such witnesses at the former trial as was desired. The testimony of a number of witnesses at the former hearing was introduced in that manner. At the close of the evidence on the part of the proponents, and also at the close of all the evidence, the contestants moved for an instruction telling the jury that the will was not the will of Welker. These motions were refused. Like motions were filed in the first trial of the cause, and the refusal of those motions was assigned as error on the former hearing here. This court on previous review, however, held that both on the issue of undue influence and mental capacity of the testator there was sufficient conflicting evidence in the record to require that those questions go to the jury.

The decree was reversed on the former hearing because of erroneous instructions. While the refusal of the court to instruct the jury to return a verdict for the contestants in this case is assigned as error, it is not seriously argued, and we are satisfied that both issues were properly submitted to the jury.

The principal grounds on which reversal is urged are: (1) That the proponents failed to make out a *prima facie* case, for the reason that the proof of the attesting witnesses to the will as the same was made in the county court was not introduced on the trial, and that the witnesses to the will did not on this trial testify that they believed that at the time Welker signed the instrument in question he was of sound mind and memory; (2) that the verdict of the jury on undue influence is contrary to the manifest weight

of the evidence; (3) that the court erred in the admission of evidence and in giving instructions to the jury.

The facts are set out at length in the former review by this court, and it is not necessary to re-state them at length.

Concerning the first point, it seems sufficient to say that no issue is raised in this bill as to the propriety of the probate of the will. The charge is, to be sure, that the testator was of unsound mind and was affected by undue influence at the time of the making of the will. It is necessary for the proponents of a will to make out a *prima facie* case even though there is no attack on the probate. To do this, the proponents must show that the testator was competent to make a will and was unaffected by undue influence at the time of the making of the same. While it is always competent to offer in evidence proof of the probate of the will together with depositions of the subscribing witnesses, this does not relieve the proponents of the necessity of making a *prima facie* case in a proceeding to contest the will. The burden is on the proponents to show that the will was in writing, signed by the testator or by some person in his presence and at his direction and attested in his presence by two or more witnesses, and that he was of sound mind and memory at the time of signing and acknowledging the same. (*Donovan* v. *St. Joseph's Home,* 295 Ill. 125.) If this appears from the evidence of witnesses to the will on the will contest it is sufficient though such proof made by them on the hearing in the probate be not offered in evidence. The witnesses to the will in this case were called, and testified that they believed that at the time of the making of the will Welker was sane and capable of executing a will. While the questions were not asked in just the form in which they had been put to the witnesses in the probate court, yet the substance was the same and the testimony of the witnesses on that point is in the record. Appellees abundantly sustained the burden upon them to make out the *prima facie* proof. The rule in will contests also requires

that the proponents offer in chief not only the evidence making a *prima facie* case, but all other evidence relating to the issue of testamentary capacity. *Donovan* v. *St. Joseph's Home, supra.*

The second point is that the verdict of the jury is manifestly against the weight of the evidence on the question of undue influence. Counsel for appellants point to the fact that Will P. Welker, a nephew of the testator and one of the three beneficiaries, for a number of years transacted all of the business and took care of all the affairs of the testator, and that he went with the testator to have the will executed and produced from his possession the will signed by the testator. Letters passing between them were offered in evidence showing a feeling of friendliness. It is conceded by appellees that the record contains sufficient evidence to raise the presumption of undue influence on the part of Will P. Welker, but it is urged that this presumption is overcome by evidence of the mental capacity of the testator, together with proof of his desire and plan to so dispose of his property. No act on the part of Will P. Welker or his brother or sister, who are the beneficiaries, is shown by the record which directly supports the charge of undue influence. The matter of undue influence rests almost entirely on the presumption raised by the fact that a fiduciary relation existed between Will P. Welker and the testator, coupled with the facts that Will P. Welker was one of the beneficiaries and produced the will at the time it was signed. The evidence does not show who drew the will. It does show that Will P. Welker and his uncle, the testator, appeared at the Second National Bank of Danville on the date of the execution of the will and Will P. Welker told Woods H. Martin, the cashier of the bank, that the testator desired to make a will, and that the nephew produced the will. By reason of a paralytic stroke the testator could talk but very little. He could say "Yes" and "No" and a few other monosyllables. The evidence does not show that be-

yond producing the will at the bank Will P. Welker had anything to do with its execution or preparation. Martin called the two witnesses, Trenary and Moore, who were then employed in the bank, and after reading the will to the testator asked him if it was his last will and testament and if he desired to execute it, and Welker answered "Yes;" that the will was then signed by Martin writing the name of the testator, the latter touching the pen while he made his mark. There is much testimony set out in the former opinion of this court showing that despite his infirmities the testator was of sound and disposing mind and memory. It is unnecessary to reiterate that testimony here. If there is in the record no error concerning the admission of evidence or the giving of instructions to the jury, the verdict of this jury, which is the second verdict of the same kind in this case, should be allowed to stand, as we are of the opinion that it cannot be said that the verdict was contrary to the manifest weight of the evidence either on the question of undue influence or mental competency of the testator.

Numerous objections are raised to the giving of instructions to the jury. It is objected that the first instruction given for the proponents was erroneous in that it told the jury that the charges made in the contestants' bill are merely formal allegations. It is argued that this cast a reflection on the character of the bill and tended to mislead the jury into discrediting the charges made therein. Counsel for appellees reply that the purpose of offering this instruction was to offset charges of fraud and other charges made in the bill which were wholly unnecessary and improper and concerning which no evidence was offered but which counsel assert were inserted for the purpose of getting charges before the jury which the contestants could not prove. Averments of such character are found in the bill and are unsupported by the proof. We are of the opinion that the jury were not misled into descrediting the proper averments of the bill by this instruction.

Instruction 4 is the next one complained of. This instruction reads as follows:

"You are further instructed that the law does not require the signature of a testator to a will to be written in his own hand, but if the person making the will signs by making his mark to an instrument and declares it to be his will and intends by making such mark to sign and execute such will, it is sufficient in law as a signature. And in this case if you believe from the evidence that Joseph Welker at the time in question intended to execute his will and make his mark for his signature thereto to the instrument offered in evidence, this in law is a sufficient signing and execution of the will, nor is it necessary that the will be dated to make it a valid will."

The objection to this instruction is, that it told the jury that signing the will by the testator's mark is a sufficient signing and execution of the will, but that such, alone, was not sufficient. We are of the opinion, however, that the jury could not have been misled by this instruction, as it was plainly intended to explain to them that one need not actually sign his name to a will but may make his mark instead.

Instructions 7, 8 and 10 offered by the proponents are objected to on the ground that they fall short of the requirements of testamentary capacity. Instruction 7 told the jury that if a person has mind enough to know what property he owns, who his relatives are and the natural objects of his bounty, and has sufficient mental capacity to know to whom he wants to give his property and the manner in which he desires to distribute it, he has sufficient mind and memory to make a will. Instruction 8 told the jury that physical disability, however great,—even senility,—does not, of itself, disqualify a man from making a will, provided he has sufficient mental capacity to know what property he owns, who his relatives are and what disposition he desires to make of his property. The gist of instruc-

tion 10 is, that it is not necessary, in order to enable one to make a will, that he be able to transact ordinary business. This instruction also sets out, in effect, the provisions of instructions 7 and 8. It is proper to instruct the jury that if they believe from the evidence that the testator possesses sufficient mental capacity to comprehend what property he has to dispose of, the natural objects of his affection and bounty, the nature of his act and the effect which his will will have on the natural objects of his bounty, he is capable of making a will though he may be aged, weak and infirm. (*Grosh* v. *Acom*, 325 Ill. 474; *Down* v. *Comstock*, 318 id. 445; *Williams* v. *Ragland*, 307 id. 386; *Farmer* v. *Davis*, 289 id. 392; *McCoy* v. *Sheehy*, 252 id. 509.) These instructions were not erroneous.

Instructions 14 and 16 are also objected to on the ground that they do not correctly state what constitutes *prima facie* proof of the validity of a will. Instruction 14 told the jury that if they believe from the evidence that the proponents have proven, by the preponderance or greater weight of the evidence, that the paper offered in evidence purporting to be the last will and testament of Joseph Welker was signed by him or by some other person in his presence by his direction, and was attested in his presence by two or more witnesses, and that Welker was of sound mind and memory at the time the purported will was signed and witnessed, such proof was sufficient to establish *prima facie* the validity of the will. It is urged that the statute requires that a will be witnessed by two or more "credible" witnesses, and that the instruction omitted that provision. Although this instruction would have more accurately stated the provisions of the statute had it contained the word "credible," yet the jury were told that the credibility of all witnesses was for their consideration, and no question on that matter was raised in the case. The jury could scarcely have been misled by such omission.

Instruction 16 is complained of because in defining *prima facie* proof it left out the requirement that the witnesses see the testator sign or that he must declare to them that the instrument is his will. This instruction told the jury that if they believe from a preponderance of the evidence that the will was signed by the deceased or by some person in his presence and at his direction and was attested in his presence by two or more witnesses, and that he was at that time of sound mind and memory, such proof establishes *prima facie* the validity of the will, and that before the jury would be justified in returning a verdict setting aside the will the testimony adduced must be sufficient to overcome testimony to show that the deceased was of sound mind and memory. While the instruction would have been more accurate as a definition if it had included the element of proclamation on the part of the testator that this was his will, and also that the proof show that it was signed at his request by the witnesses, yet no question is made of these matters in this contest and the error in the definition was harmless. *Grosh* v. *Acom, supra.*

Other instructions are objected to, but we are of the opinion that the jury were fully and fairly instructed.

In support of the last contention,—that is, that the court erred in the admission of evidence,—counsel argue that the admission of certain letters written by Alverdo Bassett on behalf of the testator and sent to Will P. Welker were incompetent on the ground that Bassett, and not the testator, wrote them. The testimony shows that Bassett, at the testator's request, because of the paralysis of the latter's hand, which prevented his writing, wrote letters in reply to those received from Will P. Welker. Bassett in his testimony detailed the manner in which these letters were written, stating that he would write what he understood the testator desired him to write, as best he could. If it was satisfactory the testator so indicated by saying "Yes" or nodding his head; if unsatisfactory, he also indicated that fact. The

testator could not dictate because of his inability to talk, due to paralysis of his vocal chords. These letters are in the record, together with those received from Will P. Welker. They appear to be responsive to the nephew's letters, and while it may be true that in conveying to Bassett the statements he wished to have written in the letters Bassett may have at times misunderstood him, yet the testator not only could hear him read these letters but could read them himself. At times he tore up a letter and would not send it. At other times he approved of the contents and the letter was sent. It seems to us that the evidence is sufficient to show that the letters, while written by Bassett, were in fact the letters of the testator.

It is also urged that these letters are misleading, as appearing to be the letters of a sane and rational person, while one of the charges in the bill in this case is that the testator was not of sound mind. We are convinced, however, that the jury, having all the facts before them concerning the manner in which the letters were written, could not be misled into giving them more weight on the issue of mental soundness on the part of the testator than that to which they were entitled. It was not error to admit them in evidence.

On a review of the whole record we are convinced that it does not contain any reversible error. Two juries have passed upon the questions of fact involved and both have found the will to be the will of Joseph Welker. The record contains no errors justifying the reversal of the decree, and the decree will be affirmed. *Decree affirmed.*