(No. 19022.—

CHARLES E. GROSSE, Appellant, *vs.* WILLIAM H. GROSSE *et al.* Appellees.

*Opinion filed December 20, 1928.*

SAMUEL P. McCONNELL, and FOLLANSBEE, SHOREY & SCHUPP, (JOHN E. GAVIN, of counsel,) for appellant.

GEORGE PFIRSHING, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The original bill in this case was filed to contest the validity of a codicil to the will of Henry C. Grosse, Sr., on the ground of its invalidity by reason of the unsoundness of mind of Grosse and of undue influence exercised by members of his family to induce him to so change his original will

as to practically disinherit his son Charles, who filed the bill to contest the validity of the codicil. In addition to charging unsoundness of mind of the testator, the bill charges that the testator's widow, Rosa Grosse, and his daughter Marion E. Kenny, entertained toward contestant hatred and revenge, and, in order to gratify that spirit, for a year or more before the execution of the codicil the wife and said daughter falsely represented to the testator the character and attitude of contestant, and thereby induced the testator to execute the codicil.

The testator died June 3, 1925, following a stroke of apoplexy, which occurred in February of the same year. At the time of his death he was about seventy-nine years old. The original will was executed July 2, 1923. It made provision for the distribution of his property very fairly and equitably among his widow and nine children. The codicil was executed late in September, 1924. The proof shows that it was executed September 24, although it was not dated. By it the testator gave the contestant $100 in lieu of all bequests or interests given to him by the original will. The bill charges that the testator, at the time he executed the codicil, was under restraint and undue influence of the widow and other defendants, and that they falsely represented the character and attitude of contestant toward the testator and the defendants, and thereby induced him to execute the purported codicil. An amended bill was filed attacking also the original will, but when the issues were made up and submitted for trial contestant withdrew any charge against the validity of the original will and agreed that no attack was to be made thereon, and the issues for trial were agreed to be whether or not the codicil was and is the codicil to the last will of the testator. A jury was waived and by consent the issues were submitted to the court without a jury. The evidence heard by the court was largely in depositions. At the conclusion of the hearing the court orally announced his decision, which is made

a part of the record and appears in the abstract. A decree was entered finding the codicil to be the codicil to the last will and testament of the testator and that the probate of it was valid.

The testator had in his early life engaged in the mercantile business at Chebanse, Illinois. He later moved to Chicago and lived there many years. He was born in Germany in 1846. While he lived in Chicago he was engaged for a time in the saloon business. He sold that business in the early nineties, and thereafter, apart from some dealing in stocks and bonds, his activities were confined to the management of property he had accumulated in Chicago. Contestant had lived for many years in South Pasadena, California. Two other sons lived in Los Angeles, in that State. The evidence tends to show that in the latter part of 1921 or 1922 the testator suffered a slight stroke, which partially incapacitated him for some time. About January 1, 1923, he and his wife went to Los Angeles and for about three months lived with contestant. They returned to Chicago, where they remained through the months of April, May and June, and in July again went to California for a period of approximately two months, during which time they were guests at the house of contestant. At the end of that time they rented rooms at the home of Arle Rothrock, where they remained until the end of that year. About January 1, 1924, at the suggestion and request of contestant, they went to a sanitarium in Denver, known as Dr. Tilden's Health School. The testator was considerably overweight and a very hearty eater. The treatment at the health school was largely regulation of diet and reduction in weight. The testator's wife was with him at that school and they remained there about one month. While testator and his wife were in the sanitarium in Denver they received a letter from contestant of great length, in which he complained bitterly of the feeling of himself and his brothers and sisters, or at least some of them, toward each other. He charged his parents were be-

ing influenced by them contrary to his advice and bitterly attacked the moral conduct of his sister Marion and charged the parents were being deceived and misled by her, and told them if they were going to listen to Tom, Dick and Harry he was not going to have anything to do about advising them any further. He said he would carry out their wishes but would have no interference from the other members of the family; that he wished to avoid any contact with any of them. That letter was dated January 24, 1924, and is too lengthy to insert in this opinion.

John Grosse, a nephew of the testator, who is not on friendly terms with contestant, lived in Los Angeles in 1924. He testified that he called many times on the testator and his wife at the solicitation of his cousins; that the testator told him he wanted to change his will and went into some detail about it. He asked witness whether it would be lawful to leave more money to one child than another. The testator said he had received a letter from contestant in Denver which displeased him very much and he wanted to change his will for that reason; that he wanted to reduce the amount provided in the will for contestant to a nominal sum. He inquired of witness whether that would make any legal difference, and witness advised him that matter was under his control. Witness further told him that would not require, he thought, a new will but could be provided for in a codicil. Witness recommended to the testator a Mr. Casey, connected with the Security Trust and Savings Bank, and told the testator he did not know whether the bank would write it or not but to see Casey. The testimony shows that through the bank officer a lawyer was procured to write the codicil from information given by the testator to the bank officer. The lawyer who wrote the codicil never saw the testator. It was executed at the bank.

Approximately eighty witnesses testified on the issues of mental capacity and undue influence. The testimony is entirely too voluminous to epitomize in an opinion. It in-

cludes the testimony of doctors and nurses and scores of laymen who had seen, treated and talked with testator, and also experts who never saw him. To our minds the testimony shows that at the time the codicil was executed the testator was not of such unsoundness of mind as to interfere with his making a valid codicil. Some of the witnesses for contestant testified that in their belief the testator was not capable of making a valid disposition of his property. Others testified to peculiar acts and conduct without expressing an opinion as to his sanity. He was childish, occasionally did unusual or unexpected things, and would cry easily when the witnesses thought there was no cause for it. He was naturally a man of strong and rather dominating character, but age and infirmities had taken their toll. They had not so impaired his mental faculties as to prevent his making a valid disposition of his property. During the period before and after the execution of the codicil he transacted such business as buying property, disposing of bonds to procure money to pay for the property, making business memoranda with reference to the transactions, and signing a number of checks. In some of these transactions he had assistance, but the weight of the proof shows he understood and knew what he was engaged· in. *Daugherty* v. *State Trust Co.* 292 Ill. 147; *Speirer* v. *Curtis,* 312 id. 152; *Wetzel* v. *Firebaugh,* 251 id. 190; *Grosh* v. *Acom,* 325 id. 474; *McGrady* v. *McGrady,* 298 id. 129.

Much complaint is made by contestant of the statement of the court, in rendering the decree, that· in view of the fact, particularly, "that the burden of establishing lack of testamentary capacity is upon the contestant, I feel constrained in finding that the contestant has not sustained his theory of the case by a preponderance of the evidence." It is argued that this was an incorrect statement of the rule of law as announced in *Donovan* v. *St. Joseph's Home,* 295 Ill. 125, and other cases. If the decree was sustained by the evidence, the fact that the court in deciding the case stated

an incorrect rule of law could not affect the correctness of the decree.

Upon the question of undue influence there is no direct testimony to sustain that charge. It is true, the relations of contestant with some, at least, of his brothers and sisters were not brotherly and sisterly. The daughter Marion was with the testator and his wife about the time of the execution of the codicil. She and some of the others assisted the testator in going to the bank when the codicil was executed, but there is no direct proof that they advised or directed him to execute it. The circumstances are such as might excite suspicion that the execution of the codicil was not the testator's free and voluntary act, but there is no direct evidence that it was not. The proof of undue influence required to invalidate a will was considered by this court in *Snell* v. *Weldon,* 239 Ill. 279, *Pollock* v. *Pollock,* 328 id. 179, and in many cases cited in those opinions. The proof failed to show that the execution of the codicil was induced by undue influence of the testator's wife and daughter Marion or anyone else. It may well be that with the feeling existing between Marion and contestant, Marion was willing, and even desirous, that contestant be disinherited, but the evidence does not warrant the conclusion that the codicil did not express the will and intent of the testator without regard to what Marion or her mother may have wished him to do. The letter of January 24, 1924, of contestant to his parents is a very bitter letter and severely arraigned and criticised the testator, his wife and other members of the family.

We have not attempted to set out the evidence, much of which is contradictory, but a reading of it from the abstract convinces us that the decree was authorized by the testimony.

We find no error in the record which would justify a reversal of the decree, and it is therefore affirmed.

*Decree affirmed.*