ANNA HUSTON *et al.* Appellants, *vs.* MARTHA J. BELL, Exrx. *et al.* Appellees.

*Opinion filed Oct. 28, '13—Rehearing petition stricken Dec. 4, '13.*

1. WILLS—*what does not affect validity of will.* Where two sisters, of advanced years, who have lived together since infancy, make mutual wills providing that the survivor shall have their common property, the fact that one of the sisters was two years older than the other and was afflicted with an incurable disease has no tendency to render her will invalid, provided she was competent to make the will.

2. The court reviews the evidence in this case and holds that it does not tend to show undue influence, and that the verdict of the jury finding that the testatrix had sufficient testamentary capacity to make the will is amply supported by the evidence.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

HERRICK & HERRICK, LEMON & LEMON, and STONE & GRAY, for appellants.

JOHN FULLER, and INGHAM & INGHAM, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Anna Huston, Belle DeLand and Laura Hamilton, appellants, filed a bill in the circuit court of DeWitt county for the purpose of contesting the will of Mrs. Sarah Dickey. An issue at law was formed under the statute and tried by a jury, resulting in a verdict sustaining the will. A motion for a new trial was made and overruled, and from a decree dismissing the bill for want of equity contestants have perfected an appeal to this court.

The bill alleged unsoundness of mind and undue influence as grounds for setting aside the will. The question of undue influence was taken from the jury by an instruction given at the request of appellees. Appellants contend that the court below erred in withdrawing the issue of undue

influence from the jury and in not setting aside the verdict of the jury because it was manifestly against the clear weight of the evidence, and in the rulings upon the evidence and instructions.

The circumstances out of which this controversy arises, as shown by the evidence, are as follows: Henry Bell located in DeWitt county in 1853. His family consisted of himself and wife and four daughters. The names of the daughters were Mary, Sarah C., Martha J. and Alma. Mary, the oldest of the daughters, married Philip Wolfe. She died in the year 1900, leaving three daughters. These three daughters were the contestants below and are appellants here. Martha J. never married. She is the executrix of the last will and testament of Sarah C. Dickey and sole beneficiary under the will. She, as executrix and individually, and her sister Alma, who married a man by the name of Geer, were defendants below and are appellees in this court. Sarah C., whose will is the subject of this contest, married a man by the name of Dickey some twenty-five or thirty years before her death. Her husband lived only seven weeks after the marriage and the widow never re-married. Neither Mrs. Geer nor Mrs. Dickey ever had any children. Henry Bell, the father, was engaged in business in the city of Clinton for six or eight years next after his removal to DeWitt county. He then purchased a farm in the northern part of the county and moved upon it. He did not pay for the farm in full at the time he purchased it. The oldest daughter, Mary, was married and living with her husband at the time the family removed to the farm. The other three daughters went with their parents to the country home. Sarah and Martha were school teachers, and both assisted their father in paying for the farm by giving him a portion of their salaries. Martha only taught school a few years, but Sarah, the testatrix, commenced teaching when she was sixteen years of age and continued her school work for thirty years. There was only about two years' difference

in the ages of Sarah and Martha. They always had a common home, and were never separated except when one or both of them were away from home, teaching. When their schools were finished they returned to their father's home, where they remained until the next year's school work was commenced. Henry Bell died testate in 1893, and by his will appointed his two daughters Sarah and Martha executrices of his will. Their mother having died a few years before their father, after the father's death Sarah and Martha were the only surviving members of the family left on the farm. They resided on the farm until 1895, when they purchased a home in the city of Clinton and moved to the city. At the time the two sisters moved to Clinton Sarah was about fifty-four years of age and Martha fifty-two. During the next seventeen years they lived together in their home in the city of Clinton and supported themselves by renting their farm of 240 acres, which had come to them under their father's will. In 1894 Sarah, the testatrix, was taken to a sanitarium, where she remained for three months, under treatment of Dr. Anna Sharpe, for nervous trouble. With the exception of her nervous trouble she had no other serious illness until she became afflicted with cancer of the stomach, which resulted in her death in February, 1912. The cancer developed in the early spring of 1911, and from that time until her death her health gradually declined. On October 9, 1911, a careful examination was made by the physicians and they reached the conclusion that her case was hopeless, and she was so informed. She received the information that she could not live long with calmness and resignation. The witnesses who were in close association with her testify that she made up her mind that she was going to die, and that she was composed and even more calm than she had previously been. Some six weeks after her physicians had given her this information she consulted the attending physician in reference to making a will. She asked him to refer her to some reliable attorney whom

she could employ to draw her will. The physician named several attorneys, among others L. O. Williams, of Clinton. She wrote a letter to Mr. Williams asking him to come to her home, 315 West Main street, to attend to some business for her. He called the following day and found the testatrix sitting up in her room, and she then told him that she wanted to make a will and that she wanted to give all of the property she had to her sister Martha; that she and her sister had always lived together and had their property in common and all of her other relatives were married and had husbands to take care of them, and she thought it would be right for her to leave her property to her sister Martha. She asked Mr. Williams whether he thought that would be a proper disposition for her to make of her property, and he told her she would have to decide that question for herself. She told him that she and her sister Martha had always lived together and had their property together and that she did not want it divided at her death; that life was uncertain and she might outlive her sister, and she wanted the property fixed so that the one who survived the other would get all the property. Mr. Williams suggested that that could be accomplished by executing mutual wills. Up to this time Martha had not been in the room. She was then called in and Mr. Williams explained to her what Mrs. Dickey had indicated as her wish, and told her that that purpose could be accomplished by each making a will in favor of the other. The matter was then discussed between the sisters, and it was agreed that wills should be prepared for each of the sisters so that the survivor would receive all the property which belonged to both of them. Mrs. Dickey gave the attorney some deeds to enable him to describe the real estate, and he went to his office and prepared the wills. When the wills were prepared he took them to the residence and left them there over night. The following morning he and the two attesting witnesses that had previously been agreed upon went to the residence and

the two wills were executed. The joint property of the tes-·
tatrix and her sister consisted of 240 acres of land, worth
about $200 per acre, and about $4000 worth of other prop-
erty. At the time of her death the testatrix was over.
seventy years of age and her sister Martha was two years
younger. By the mutual wills these two sisters each gave
the other all her property, of every kind and character, and
they each appointed the other sole executrix of her will.

The foregoing is a general outline of the facts and cir-
cumstances out of which this controversy grows. There is
no evidence whatever in the record that the will in question
was the result of undue influence exercised by Martha J.
Bell or any other person. The testatrix was a woman of
more than ordinary intelligence. The evidence shows that
she transacted her own business, wrote leases, and other
contracts in relation to their farm, and attended to the de-
tails of her business affairs without the aid or assistance of
anyone. These two sisters had been together practically
from their infancy to old age. They had always had a
home in common. Under the circumstances the most nat-
ural thing for them to do was to provide, as they did in
their respective wills, that the survivor should have all of
the common property. Alma, the only surviving sister, was
married and had a husband to provide for her, and the three
appellants, her nieces, were also married and had husbands
to depend upon.

The evidence tending to show want of testamentary ca-
pacity in Mrs. Dickey is very unsatisfactory. Quite a num-
ber of persons who had some acquaintance with the testatrix
expressed the opinion that she was of unsound mind, but
when required to state the grounds of such opinions, the
fact was usually brought out that she appeared to be nerv-
ous and in some respects eccentric. Some of the witnesses
say that she had a queer expression in her eyes. On the
other hand a large number of witnesses who had known the
testatrix intimately for many years and whose opportuni-

ties to know the condition of her mind were much better than were those of the witnesses who testified for appellants, expressed the unqualified opinion that she was of sound and disposing mind at the time the will was executed. A brief reference to the testimony of a few of these witnesses will show the general trend of their testimony.

Alice Armstrong had been intimately acquainted with the testatrix for fifteen years, was a next door neighbor to her during that time and never suspected that there was anything wrong with her mind. Three other members of the Armstrong family gave similar testimony. Mr. and Mrs. T. D. Bryant testified that they had known the testatrix intimately since the civil war and had frequently held conversations with her and never observed anything unusual about her mental condition. Mrs. McCord had known her for thirty years and had frequently visited with her and received visits from her. She testifies that she never suspected that the testatrix was of unsound mind. Mrs. America Carter had been a lifelong friend and an intimate associate with the testatrix. Their friendship was formed when they were school girls and continued until the death of the testatrix. They attended the same church and belonged to the same societies. Mrs. Carter testifies that the testatrix was at all times a woman of unusual business ability, and she particularly remarks about her extraordinary memory. This witness was with the testatrix a great deal during her last illness, and, perhaps next to her sister Martha, was one of her closest and most intimate associates. Her testimony, if true, (and there appears to be no reason to question it,) is a complete answer to the charge that the testatrix was of unsound mind. Mrs. Emma Ross had known Mrs. Dickey for fifty-five years and her acquaintance continued down to the time of her death. She was with the testatrix the day before she died. She fully corroborates Mrs. Carter's testimony as to the mental condition of

Mrs. Dickey. Mrs. Hattie Wilson, county superintendent of schools of DeWitt county, had known the testatrix for thirty years and had taught school in the same building with her. Their association was intimate and continued down to the death of Mrs. Dickey. She also agrees with the other witnesses that there was nothing to cast a suspicion upon the mental capacity of Mrs. Dickey. There were some thirty or more other witnesses, including persons who had been employed for various purposes by Mrs. Dickey, tenants who had leased and cultivated her farm, physicians who had treated her and ministers who had been her pastors. These persons had known the deceased more or less intimately for periods ranging from fifteen to fifty years, and they all gave evidence establishing the soundness of mind of the testatrix beyond a reasonable doubt. Taking the evidence upon this question altogether, it would seem impossible to reach any conclusion in reference to this woman's mental capacity other than that reached by the jury. Our conclusion is that the verdict is in accordance with the clear preponderance of the evidence. Under this evidence, had a contrary verdict been rendered it could not have been sustained.

Appellants lay much stress upon the circumstance that at the time these mutual wills were executed the testatrix was afflicted with an incurable disease and that it was known to her sister Martha that she would in all probability survive Mrs. Dickey, and that there was therefore no consideration to Mrs. Dickey to execute a will in favor of her sister Martha. It is argued that since the death of Mrs. Dickey the will of Martha has become void, for the reason that there was no devise over in case she survived Mrs. Dickey. We fail to see any force in this argument. The only will involved in this proceeding is that of Mrs. Dickey. The evidence here shows that she was competent to make a will and that she did so, giving to her sister all of her interest in the joint property. What will become of the

property at the death of Martha is not involved in this proceeding. The idea of executing mutual wills between these sisters did not originate with Martha. It appears to have been first suggested by Mr. Williams, the attorney, as a means of accomplishing the desire expressed by Mrs. Dickey, and after the matter had been thoroughly discussed and tentatively agreed to by Mrs. Dickey the sister was called in and she merely assented to the proposition, which, in effect, came from the testatrix. The fact that upon the doctrine of probabilities the testatrix would die before her sister can not affect the validity of a will otherwise free from legal objections.

Appellants insist that the court erred in instructing the jury that the fact that Martha J. Bell was younger and in good health and the deceased was afflicted with an incurable disease would not affect the validity of the will in question where all the facts were known to both parties. As already indicated, we think this view of the law is correct.

Complaint is also made of other instructions given on behalf of appellees. Seventeen instructions were given by the court on behalf of appellees, most of which are criticised by appellants. We do not deem it necessary to take up these several objections in detail. Taking the entire series of instructions together, there does not appear to be any well founded objection to them, but, in view of the decided preponderance of the evidence in support of the verdict, even if there were inaccuracies in the instructions we would not reverse the judgment, for the reason that another trial would not change the result.

Appellants complain of the rulings of the court in the admission and exclusion of the evidence. Appellants sought to prove that their father and mother had made some improvements on the farm before their grandfather moved on it from Clinton. This evidence was objected to and the objection sustained. We think the ruling of the court was correct. We do not see that this evidence tended to

throw any light on the issue being tried. The court also excluded evidence offered tending to show statements made by appellee Martha J. Bell in regard to the capacity of the testatrix to transact business, and also what she said in relation to taking her to a sanitarium. Miss Bell did not testify in the case and this evidence was not offered to impeach or contradict her. It could only have been proper, if at all, as an admission of a party to the record, and as such it amounted, at most, to the expression of an opinion in regard to the ability of the testatrix to transact business a short time before her death. There was no reversible error committed in the exclusion of this evidence.

Appellants make some other complaints in regard to the rulings of the court on the trial, but none of them are of such serious character as to justify the reversal of this decree. The cause was fairly and fully tried and the proper result reached and substantial justice has been done.

The decree of the circuit court of DeWitt county is affirmed.

*Decree affirmed.*